No. 73,196

In the Matter of KENNETH P. SECK, *Respondent.*

(905 P.2d 122)

Opinion filed November 3, 1995.

*Marty M. Snyder*, deputy disciplinary administrator, argued the cause, and *Bruce E. Miller*, disciplinary administrator, was with her on the formal complaint for the petitioner.

*Howard E. Bodney*, of Overland Park, argued the cause for respondent, and *Kenneth P. Seck*, respondent, argued the cause pro se.

*Per Curiam:* This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against Kenneth P. Seck, of Overland Park, an attorney admitted to the practice of law in Kansas. A hearing was held before a panel of the Kansas Board for Discipline of Attorneys. The respondent appeared pro se and the Disciplinary Administrator appeared by and through Marty M. Snyder, Deputy Disciplinary Administrator. The respondent's motion for continuance and his objection to the makeup of the panel were denied. After the hearing, the panel concluded that the following findings of fact were established by clear and convincing evidence:

"1. Respondent is an attorney at law; his Kansas Attorney Registration number is 6974, and his last registration address for the Clerk of the Appellate Courts of Kansas is: 8600 W. 95th Street, Suite 104, Overland Park, Kansas 66212.

"2. Respondent has engaged in the active practice of law in Kansas and Missouri for 25 years. His practice was initially concentrated in the domestic relations and divorce area, but in the last 6 to 8 years has been concentrated in the areas of workers' compensation and personal injury.

"3. Respondent's client, Ms. Hager-Early, was injured in an accident on January 12, 1990, and employed Respondent to represent her in filing a lawsuit. A contingent fee based upon the amount of the recovery was agreed upon but never put into writing. The lawsuit was filed January 10, 1992, by Respondent.

"4. Ms. Hager-Early's insurance company sent Respondent a standard letter notifying him of the insurance company's personal injury protection (PIP) lien. Some 10 months later the lawsuit was settled for $25,000, which included the PIP lien, plus $1,700 for property damages.

"5. Respondent attempted to negotiate with his client's insurance company concerning repayment of the PIP lien in the amount of $3,489.36, from the proceeds of settlement; the insurance company refused to negotiate, and insisted upon being paid the amount of its PIP lien.

"6. Upon settlement of the case, Respondent received three checks, including a check for $3,489.36 made payable jointly to his client, her insurance company, and Respondent.

"7. On March 3 Respondent had the representative for his client's insurance company endorse the PIP lien check. Respondent deposited the check into his trust account and withdrew the amount of his contingency fee, leaving a net deposit of $2,326.24. Respondent wrote a letter to the insurance company advising that he would remit the amount of the PIP lien forthwith to his client's insurance company.

"8. Despite the assurances to his client and her insurance company, Respondent failed to remit the amount of the PIP lien to the insurance company and failed to respond to telephone calls and letters from the insurance company. Respondent failed to notify his client that he took this action.

"9. The amount of the PIP lien proceeds due to his client's insurance company, $2,326.24, initially remained in respondent's trust account; however, respondent withdrew portions of this amount from his trust account and spent it personally. Respondent admitted that he knew that no portion of the PIP lien proceeds could possibly have been payable to him since he had previously withheld from the deposit the amount of his contingent fee for collecting the PIP proceeds. Respondent knew that the full amount of such PIP lien proceeds were payable and belonged to either his client or her insurance company. As the result of having ignored the telephone calls and letters from his client's insurance company, the insurance company retained the service of a law firm which wrote to the Respondent and made demand on him for the amount of the PIP lien. Respondent neglected to respond to this demand letter for several months, with the result that he and his client had suit filed against them by his client's insurance company.

"10. Respondent met with his client and advised her that he would take care of the lawsuit and then filed an answer with multiple counterclaims against the insurance company. Respondent did not consult with his client before filing the answer or before filing the counterclaims and did not furnish his client with copies of the answer and counterclaims or the subsequently amended answer and counterclaims until several months after having filed them.

"11. When his client obtained new counsel the lawsuit was finally settled. Respondent paid his client's insurance company $2,326.24 to satisfy its PIP lien and paid $1,163.12 to his client to compensate for the added attorney's fees and inconvenience caused by his actions.

"12. Respondent admitted that he had handled only one previous case involving a PIP lien and that he was unfamiliar with how to handle a PIP lien claim."

Based upon the above findings, the panel concluded:

"Respondent undertook to handle a matter for which he was not competent, he made false statements to his client's insurance company, and he failed to keep his client advised of the developments in the matter he was handling. He was not diligent in responding to the inquiries of his client's insurance company, he filed an answer and counterclaims in a lawsuit without consulting his client and without revealing to her that he and the client had both been named in the lawsuit, creating a conflict of interest in the representation, and he knowingly withdrew funds from his trust account for his personal use knowing that the funds belonged to others. Respondent failed to reduce to writing his contingent fee agreement with his client."

The panel concluded that clear and convincing evidence established that the respondent violated the following provisions of the Model Rules of Professional Conduct: MRPC 1.1 (1994 Kan. Ct. R. Annot. 292), MRPC 1.2(a) (1994 Kan. Ct. R. Annot. 295), MRPC 1.3 (1994 Kan. Ct. R. Annot. 297), MRPC 1.4 (1994 Kan. Ct. R. Annot. 302), MRPC 1.5(d) (1994 Kan. Ct. R. Annot. 306), MRPC 1.15 (1994 Kan. Ct. R. Annot. 332), MRPC 3.7 (1994 Kan. Ct. R. Annot. 357), MRPC 4.1 (1994 Kan. Ct. R. Annot. 360), and MRPC 8.4(c), (d), and (g) (1994 Kan. Ct. R. Annot. 379).

The panel found the following aggravating and mitigating circumstances.

Aggravating circumstances:

"1. Prior disciplinary offenses. Respondent has received two previous informal admonitions and two previous orders of public censure.

"2. Dishonest or selfish motive. The amount of the PIP lien proceeds withdrawn from the trust account were knowingly withdrawn for the benefit of Respondent at a time when he knew that no portion of the PIP lien proceeds belonged to him.

"3. Pattern of Misconduct. The writing of the false letter to the insurance company advising that the PIP lien proceeds would be forthcoming, the failure to communicate with his client about the disposition of the PIP lien proceeds, the failure to respond to the insurance company's repeated attempts to get in touch with Respondent, the filing of an Answer and Counterclaims without consulting his client, and the withdrawal of the PIP lien proceeds from the trust account for Respondent's personal use show a pattern of misconduct.

"4. Multiple Offenses. Multiple offenses and violations of the Model Rules of Professional Conduct occurred.

"5. Refusal to Acknowledge Wrongful Nature of Conduct. While Respondent admitted that he might have handled some aspects of the representation of his client in a different fashion, he did not admit mishandling of the PIP lien proceeds

by failing to remit promptly to the insurance company, and he did not admit and declined to explain his wrongful withdrawal of the PIP lien proceeds from his trust account.

"6. Vulnerability of Victim. Respondent's client was an individual who had sustained permanent injuries and was not skilled or experienced in business matter[s] or in the handling of litigation.

"7. Substantial Experience in the Practice of Law. Respondent has been a lawyer for 25 years and by his own admission has handled these kinds of cases for the last six to eight years."

Mitigating circumstances:

"The panel heard Respondent's arguments in mitigation and found that there were no mitigating circumstances or factors, except that respondent has fully repaid the PIP lien and has fully reimbursed his client for her attorneys' fees."

The hearing panel recommended that the respondent be suspended from the practice of law for a period of 2 years. The panel also recommended that the respondent be required to satisfy several conditions relating to his competence to practice law prior to reinstatement.

In his brief and during oral argument, the respondent took issue with several of the actions of the hearing panel. The respondent argued that several of the findings of fact made by the hearing panel were not supported by, or were against, the clear weight of the evidence. However, a review of the record convinces us that the hearing panel's findings of fact were supported by the evidence and that the evidence is sufficient to establish the violations found by the hearing panel. We adopt the findings and conclusions of the panel and conclude that the findings are established by clear and convincing evidence.

The respondent further argued that the hearing panel was prejudiced against the respondent because the panel was made up of the same persons who had heard a previous disciplinary matter concerning the respondent. We note that the respondent first presented this argument to the disciplinary panel for the first time on the date of hearing. Under the Board for Discipline of Attorneys Procedural Rule D.1 (1994 Kan. Ct. R. Annot. 233), objections to the composition of the hearing panel must be made by a motion in writing at least 10 days before the hearing. This the respondent

failed to do, although he was notified of the composition of the hearing panel 3 months prior to the hearing.

Moreover, we know of no rule or statute that would prohibit a panel which has previously recommended imposition of disciplinary sanctions on an attorney from hearing a subsequent disciplinary action involving the same attorney, absent evidence of a clear and convincing nature presented by the respondent establishing bias or prejudice on the part of the panel. In his oral motion before the panel, the respondent alleged no facts and presented no arguments supporting bias or prejudice on the part of the panel.

Finally, the respondent argued that the panel violated his substantial rights in denying his motions for continuance. The record indicates that the respondent made his first request for a continuance 2 days before the scheduled hearing date. It was denied the next day, and the respondent made another motion for continuance on the day of the hearing. We have reviewed the record and determined that the panel did not abuse its discretion in denying the respondent's motions.

We have considered the respondent's past record and the evidence presented in this case. While we agree that the respondent should be suspended from the practice of law, we conclude that 2 years' suspension is not appropriate under the circumstances. We are convinced that the respondent should be indefinitely suspended from the practice of law in this state.

IT IS THEREFORE ORDERED that Kenneth P. Seck be and he is hereby indefinitely suspended from the practice of law in the State of Kansas commencing on the date of this opinion.

IT IS FURTHER ORDERED that the respondent shall forthwith comply with Supreme Court Rule 218 (1994 Kan. Ct. R. Annot. 217) and pay the costs of this action and that this order be published in the official Kansas Reports.