No. 78,308

In the Matter of KENNETH P. SECK, *Respondent.*

(949 P.2d 1122)

Opinion filed December 12, 1997.

*Marty M. Snyder*, deputy disciplinary administrator, argued the cause and was on the formal complaint for the petitioner.

*Kenneth P. Seck* argued the cause pro se.

*Per Curiam*: This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against Kenneth P. Seck, of Overland Park, an attorney admitted to the practice of law in Kansas.

On August 30, 1996, a formal complaint was filed by the disciplinary administrator's office against the respondent Kenneth P. Seck. The complaint concerned a matter that the respondent had handled for a client, Mary Little, beginning August 1993. The respondent was accused of violating MRPC 1.2 (1997 Kan. Ct. R. Annot. 273) (scope of representation); MRPC 1.3 (1997 Kan. Ct. R. Annot. 276) (diligence); MRPC 1.4 (1997 Kan. Ct. R. Annot. 282) (communication); MRPC 1.5 (1997 Kan. Ct. R. Annot. 289) (fees); MRPC 1.7 (1997 Kan. Ct. R. Annot 297) (conflict of interest: general rule); MRPC 1.8 (1997 Kan. Ct. R. Annot. 301) (conflict of interest: prohibited transactions); MRPC 1.15 (1997 Kan. Ct. R. Annot. 316) (safekeeping property); MRPC 1.16 (1997 Kan. Ct. R. Annot. 324) (declining or terminating representation); MRPC 8.4 (1997 Kan. Ct. R. Annot. 366) (misconduct); and Supreme Court Rule 207 (1997 Kan. Ct. R. Annot. 213) (duties of the bar and judiciary).

A hearing was held before a panel of the Kansas Board for Discipline of Attorneys on October 10, 1996. The respondent appeared pro se and the Disciplinary Administrator appeared by and through Marty M. Snyder, Deputy Disciplinary Administrator. Two days prior to the hearing, the respondent filed a motion for continuance, which was denied by the panel. At the hearing, the

Deputy Disciplinary Administrator called Jo Ann Butaud, a Johnson County attorney, to testify. Butaud stated that she had been contacted by the respondent's client, Mary Little, in November 1995. The Deputy Disciplinary Administrator introduced, over the objection of the respondent, the letter from Little to Butaud in which Little explained the matter and asked for help.

In her letter, Little stated that she retained the respondent in August 1993 to draw up a lease for house rental between the prospective renters, the Ledenbachs, and herself, and that the lease required a down payment of $2,000. In her letter, Little stated that she told the Ledenbachs to make the check payable to the respondent and herself. According to Little, the Ledenbachs told her that the respondent had directed them to make the check payable to the respondent *or* Little.

According to Little's letter, she became concerned in January 1994 when she had not received a copy of the lease. She called the respondent and asked for a copy of the lease as well as an itemized statement for his services. The respondent sent her a copy of the lease on February 15, 1994.

Little stated that she tried calling the respondent several times after this because she had not received the money and could not reach him. She left a message on his answering machine threatening to call the Disciplinary Administrator or the police. Soon after, she received a letter from the respondent promising to provide her with an accounting in the near future, along with a promissory note for $2,100.

Butaud testified that she wrote a demand letter to the respondent on November 27, 1995, asking for the $2,300 he had received, plus interest. There was no response to the letter and on January 13, 1996, she again wrote to the respondent. In response to this letter, she received a check from the respondent's attorney, Howard Bodney, for $2,855, which represented the principal amount plus interest due on the principal. Butaud further testified that she reported the respondent to the Disciplinary Administrator.

The panel also admitted without objection Exhibit D, a letter from the respondent to Little apologizing for not sending a copy of the lease earlier; Exhibit E, a letter from the respondent to Little

responding to Little's phone message demanding payment, along with the promissory note; Exhibit G, the demand letter sent on November 27 by Butaud; and Exhibit H, a photocopy of the check by the respondent to Little for $2,855.

The Deputy Disciplinary Administrator called the respondent as a witness. The respondent stated that he had no information or time records regarding his work for Little because he had moved his office and thrown the file away. He stated that Little had originally contacted him to help her find renters for her house and that he found the Ledenbachs after about 3 months of work. The respondent admitted that he had prepared the lease and that he had collected $2,300 earnest money. He maintained that Little told him to deposit the check and keep the money, at that point, to pay for his legal fees and to cover possible future legal work. The respondent stated that he had his time records added up on post-it notes at the time. The respondent testified that in addition to preparing the lease, he had located prospective tenants, had requested a title report, and had shown the property. The respondent stated that he told Little on the telephone in August 1993 that he probably owed her $900 out of the earnest money deposited after his legal bill.

Exhibit B, a copy of a deposit slip, was admitted into evidence over the objection of the respondent. The deposit slip showed that of the $2,300 the respondent received from the Ledenbachs, he deposited $1,300 in his trust account and kept $1,000. In his testimony before the panel, the respondent stated that he stipulated with investigating attorney Kevin Moriarty that he withdrew his client's funds below the $900 that he told Little that he owed her in that telephone conversation. However, he refused to stipulate before the panel that he had actually drawn the account down to that level. The respondent acknowledged that the investigating attorney had asked for copies of his trust account statements, and he stated that he told the investigating attorney that he would rather not provide them because it would be disruptive to his bank. The respondent also acknowledged that he did not provide statements but again claimed that he agreed with the investigating attorney to stipulate that he had drawn the trust account down past $900.

Over the respondent's objection, part of Exhibit C, which consisted of bank statements from the respondent's bank, was admitted. Those statements showed that on December 31, 1993, the respondent's trust account had a balance of -$0.78.

The respondent denied that he was contacted numerous times by Little. The respondent stated that Little contacted him prior to February 14, 1994, to ask for a copy of the lease and on March 4, 1994, to demand the money. The respondent explained that Little demanded $2,100 plus interest rather than $2,300 because Little felt that $200 would cover his legal fees. When asked about the promissory note, the respondent admitted that Little did not authorize a loan or the sending of a promissory note.

The respondent stated that he believed he kept accurate records, furnished an accounting on request, and protected trust funds in his possession. He offered no other evidence on his behalf.

In its final hearing report, the hearing panel made the following findings of fact:

"2. On August 14, 1993, Mary Little telephoned Respondent for assistance in a landlord tenant matter. Respondent had represented Ms. Little previously in an unrelated matter. Ms. Little had located tenants for her property, the Ledenbachs, but lived in Florida and needed Respondent's assistance in preparing and executing the lease on her behalf. Respondent accomplished this and the lease was signed August 17, 1993, and an earnest money deposit of $2,300.00 was paid by the Ledenbachs on August 17, 1993.

"3. On August 18, 1993, Respondent prepared a deposit slip depositing $1,300.00 of the Ledenbach funds into his client trust account. He kept out $1,000.00 in cash for his own personal use.

"4. Thereafter, Respondent did not forward Ms. Little's portion of the funds ($2,100.00 after subtracting his $200.00 attorney fee) to her, nor did he provide an accounting of the money. Instead, he proceeded to spend all of the $1,300.00 trust funds for his own personal use, and by the end of the year, the trust account balance was a negative figure.

"5. Ms. Little contacted Respondent repeatedly leaving messages inquiring about her funds, but received no response. Finally, Respondent did respond by writing Ms. Little on February 14, 1994, and sending her a copy of the lease. He promised an accounting of time and expenses 'in the next week.'

"6. When Ms. Little received no further information on her funds, she left a message March 4, 1994, threatening to report Respondent to the police and the Disciplinary Administrator's Office. Respondent wrote her that date. Instead of providing an accounting or transmittal of funds, he sent a promissory note for Ms.

Little's portion of the funds in the amount of $2,100.00 plus interest. Ms. Little never authorized any loan or promissory note to the Respondent and at that time Respondent's trust account contained a negative balance.

"7. Despite another promise in his March 4, 1994, letter to provide 'an accounting of my time and expenses in the near future,' Respondent never did so. More than eighteen (18) months later in November, 1995, Ms. Little contacted Johnson County attorney, Jo Ann Butaud, for assistance in collecting her funds from Respondent. Based on the information provided, Ms. Butaud testified she wrote a demand letter to Respondent on November 21, 1995, and then filed a disciplinary complaint.

"8. On January 13, 1996, Respondent caused a cashier's check in the amount of $2,855.00 to be issued to Ms. Little.

"9. The Disciplinary Administrator's Office assigned attorney Kevin P. Moriarty, Overland Park, Kansas, to investigate the claim. By letters dated February 9, 1996, and April 10, 1996, Mr. Moriarty requested copies of monthly statements of respondent's trust account for the time period August of 1993 to January of 1996. By letter dated April 30, 1996, Respondent wrote to Mr. Moriarty stating, 'It appears as though I have failed to keep complete records of my trust account funds as I should have and failed to render a full accounting in writing of the disposition of Ms. Little's funds.'

"10. Respondent did not provide copies of his monthly trust account statements to the investigator. These records were subsequently acquired through a subpoena duces tecum to Respondent's bank."

The panel found that the respondent had violated MRPC 1.4, 1.5, 1.15, and 8.4. The panel found no violation of MRPC 1.2, 1.3, 1.7, 1.8, or 1.16 or Supreme Court Rule 207.

The panel heard arguments and evidence concerning discipline. The Deputy Disciplinary Administrator argued that the respondent had been disciplined before, that he took his client's money and did not refund the money when asked, that he obstructed the disciplinary proceeding, and that he showed no comprehension of the wrongful nature of his conduct. She argued that the respondent should be disbarred. The respondent argued that he did not embezzle funds, that he had no dishonest or selfish motive, and that he had tried to improve his practice by keeping better track of cases. He also noted that his client did not complain or testify against him.

The panel made the following findings of fact in its report:

"1. Respondent is 53 years old. He was admitted to the bar of the State of Kansas in 1969.

"2. Respondent was indefinitely suspended from the practice of law in the State of Kansas. *In Re Seck*, 258 Kan. 530, 905 P.2d 122 (1995). Prior to his indefinite suspension, he had received two previous orders of public censure. He was disbarred in the state of Missouri by Order of Reciprocity entered September 17, 1996.

"3. Respondent testified in mitigation in his own behalf. He stated he did not have a dishonest or selfish motive in his dealings with Ms. Little, but acknowledged he failed to adequately communicate with her on a timely basis."

The panel considered the following factors in aggravation in its final hearing report:

"1. Respondent's previous disciplinary record as set forth above.

"2. Respondent took his client's trust fund money and did not refund it until after a disciplinary complaint had been filed.

"3. A pattern of misconduct is established in Respondent's multiple disciplinary offenses.

"4. Respondent has substantial experience in the practice of law.

"5. Respondent failed to provide documentation to the disciplinary investigator as requested.

"6. Respondent has failed to acknowledge the wrongful nature of his conduct.

"7. The Disciplinary Administrator's Office advises Ms. Little, Respondent's client, is elderly. The evidence established she lived out of state."

After considering the evidence, the panel declined to recommend disbarment but instead recommended that the respondent be indefinitely suspended. By way of explanation, the panel stated that the evidence produced by Butaud did not conclusively establish grounds for disbarment. The panel noted that it "would have welcomed testimony from Mr. Moriarty [the investigating attorney] and/or Ms. Little," especially in light of the severity of the request for disbarment.

The respondent now takes exception to the report of the disciplinary panel.

## PROCEDURAL DUE PROCESS

The respondent's first contention is that he was not afforded procedural due process. He contends that the panel should have granted him a continuance in order to depose his former client and obtain counsel. According to the respondent, he was unable to effectively represent himself as he was on medication for depres-

sion and because he was, at the time, indefinitely suspended as the result of his prior case, there was no need to rush to judgment.

The granting of a continuance is within the discretion of the panel. See *In re Seck*, 258 Kan. at 534. The record reveals that the respondent's motion for continuance was filed with the panel October 8, 1996, 2 days prior to the hearing. The panel denied the respondent's motion, concluding:

"The reasons for the denial that are not enumerated, because I was attempting to get notice to everyone, are simply these. It appears, at least, from the exhibits that the panel has received that the complaint in this file was served, at least, in the latter part of '95, in terms of the investigation and that the respondent has been on notice throughout '96 of this pending disciplinary matter. The formal complaint was served on August 30th on both the respondent and apparently at that time he was represented by Mr. Bodney as counsel. At least from the record that's been provided to us, the reasons requested for the continuance were death of a family member, the respondent's father. And it appears from our records that Mr. Seck's father died in the spring of '95, well over a year ago. As well as some marital problems experienced this year. Given the short notice for the continuance to this panel, as well as the notice of matters that the respondent has been advised of, has had an opportunity, at least, prior to the first week of October to request of the Disciplinary Administrator's Office a deposition, had plenty of time for the parties to conduct discovery if it had been appropriate and the late notice—or the late request for continuance. Those are the reasons why the continuance was denied."

It is true that a lawyer charged with misconduct in a disciplinary proceeding is entitled to due process, including notice of the nature of the charges against him or her and a meaningful opportunity for a defense. *In re Matney*, 241 Kan. 783, 789-90, 740 P.2d 598 (1987). The standard of review is one of abuse of discretion. In denying the respondent's motion for continuance, we conclude that the panel did not abuse its discretion. We further conclude under all the circumstances that there is no evidence supporting the respondent's contention that his due process rights were violated by the failure to grant his motion for continuance.

## SUBSTANTIVE DUE PROCESS

The respondent next contends that he was not afforded sub-

stantive due process. He contends that the entire presentation of evidence was hearsay, as his client was not present.

Although the respondent's contentions are somewhat vague, the thrust of his argument is that certain evidence, namely Exhibit F, and the return receipt showing that the respondent received the complaint, were hearsay and, thus, inadmissible. His main contention centers on alleged hearsay evidence contained in Exhibit F.

Supreme Court Rule 211(d) (1997 Kan. Ct. R. Annot. 224) provides that "[t]he hearing shall be governed by the Rules of Evidence as set forth in the Code of Civil Procedure." Among these rules is the prohibition of the admission of hearsay evidence. See K.S.A. 60-460. We have implicitly held that the hearsay rule is applicable in disciplinary actions. See *State v. Scott*, 230 Kan. 564, 567, 639 P.2d 1131 (1982) (holding that deposition testimony is an exception to hearsay).

Exhibit F is hearsay. The admission of this letter into evidence was error. While its admission affects some of the panel's findings, the admission does not deny the respondent substantive due process of law. Other competent evidence of record supports the ultimate conclusion of the panel.

## PANEL'S FINDINGS OF FACT

Attorney misconduct must be established by substantial, clear, convincing, and satisfactory evidence. *In re Wilkinson*, 251 Kan. 546, 554, 834 P.2d 1356 (1992). This court has the duty in a disciplinary proceeding to examine the evidence and determine for itself the judgment to be entered. *In re Carson*, 252 Kan. 399, 406, 845 P.2d 47 (1993). Although the panel's report is advisory only, it should be given the same dignity as a special verdict by a jury, or the findings of a trial court, and will be adopted where amply sustained by the evidence, or where it is not against the clear weight of the evidence, or where the evidence consists of sharply conflicting testimony. 252 Kan. at 406. Therefore, this court should examine the disputed findings of fact and determine whether they are supported by the evidence.

The respondent contends that many of the findings of fact made by the panel were contrary to the evidence presented. He claims that these misstatements were material to the panel's decision.

The first finding of fact to which the respondent takes exception is paragraph 2. The respondent contends that the matter started in 1991, not 1993, as found by the panel. The respondent claims that Little contacted him for help in 1991 but the tenants were not located until 1993. However, the respondent's assertion was not made to the panel and conflicts with his own statement to the panel that it took him at least 3 months to find tenants before the lease began in 1994. The panel's finding in paragraph 2 is supported by clear and convincing evidence.

The respondent contends that paragraph 3 in the panel's final report is not supported by the evidence. We agree. Disregarding Exhibit F because it is hearsay, it becomes impossible for this court to determine the fee arrangement between the respondent and his client. The evidence of record does not establish the fee arrangement between the parties or the amount earned by the respondent.

The respondent also takes exception to paragraph 4, which states that he failed to forward Little's portion of the funds which the panel found to be $2,100 after the subtraction of $200 for attorney fees. The respondent contends that his attorney fees were greater than $200. The evidence does not establish an agreement between the respondent and Little for a $200 attorney fee. The only evidence of such a fee is Exhibit F, which was not admissible. While clear and convincing evidence does not support the panel's finding as to the exact dollar amount of the fee, clear and convincing evidence does establish that "[r]espondent did not forward Ms. Little's portion of the funds" to her until after the disciplinary proceeding was commenced.

The respondent next takes exception to paragraph 5, stating that contrary to the paragraph, Little did not repeatedly contact him but only once asked for her money. We agree that there is no clear and convincing evidence establishing repeated contacts. The only evidence that the respondent was contacted repeatedly by Little is found in Little's letter to Butaud, which should not have been admitted.

The respondent takes exception to paragraph 6, contending that Little was not threatening and was merely upset at being unable to reach him. He admits that he sent her the promissory note in

order to document the call and the need to finish her case. The respondent admits in his testimony that Little demanded her money. His letter to Little also substantiates some of the findings contained in paragraph 6. We conclude that the findings contained in paragraph 6 are supported by clear and convincing evidence.

The respondent also complains about findings contained in paragraphs 9 and 10. He contends that contrary to the assertions in these paragraphs that he did not provide copies of his monthly trust account to the investigating attorney, he entered into a stipulation with the investigating attorney whereby he agreed to stipulate to certain facts and admit his failure to keep timely records. The evidence shows that the respondent did send a letter to the investigating attorney stating, "It appears as though I have failed to keep as complete records of my trust account funds as I should have and failed to render a full accounting in writing of the disposition of Ms. Little's funds." With regard to the respondent's assertion that he did not fail to provide copies of his trust account but was excused from doing so because of a stipulation with the investigating attorney, the respondent's position has merit.

Kevin Moriarty, the investigating attorney in this case, was not called as a witness. Even though the respondent's records were eventually subpoenaed, the respondent's testimony concerning the stipulation is unrebutted. On the evidence presented, there is insufficient evidence to support a conclusion that the respondent failed to produce the records when requested.

The respondent also disputes the panel's findings of factors in aggravation. He first contends that contrary to paragraph 2 of the findings in aggravation, he did not overtly take his client's money. However, based upon the respondent's own admission, he did withdraw for his personal use a portion of the funds belonging to his client. Clear and convincing evidence establishes that the respondent violated the provisions of MRPC 1.15 and 8.4.

The respondent also disputes paragraph 3, concerning pattern of conduct. He contends that this case began in 1991 and so predates his earlier disciplinary cases. However, the respondent fails to realize that his violations were of a continuing nature and although the case began either in 1991 or 1993, he continued to

withhold the money until January 13, 1996. This continuing violation, along with his two prior informal admonitions and two previous orders of public/published censure, as well as his indefinite suspension for conduct occurring in 1993, more than supports the panel's finding of a continuing pattern of conduct.

The respondent disputes the panel's finding in paragraph 5 that he intentionally refused to provide documentation to the investigating attorney as stated in the paragraph. As noted above, there is insufficient evidence on this point in that the investigating attorney did not testify and the respondent himself testified that while he initially failed to provide the statements as requested, he entered into a stipulation making such provision unnecessary.

Finally, the respondent contends that the panel erred in finding under paragraph 7 that his client was elderly. He notes that the client was 55 years of age in 1991. The only mention in the hearing of Little being elderly was during the Deputy Disciplinary Administrator's argument, where she stated, "This was an elderly woman who was out of state." No evidence was introduced concerning Little's age. There is no clear and convincing evidence supporting the panel's finding, and it is not considered in our determination of the appropriate sanction.

Based upon our consideration of the record, we conclude clear and convincing evidence establishes that the respondent violated the provisions of MRPC 1.15 and 8.4. The record does not establish that the respondent violated MRPC 1.5. We also conclude that the panel was correct in its findings that clear and convincing evidence did not establish violations of MRPC 1.2, 1.3, 1.7, 1.8, or 1.16 or Supreme Court Rule 207.

The respondent contends that because of the admission of improper evidence, the report of the hearing panel should be set aside. He has filed numerous motions attacking the final report of the panel. The Disciplinary Administrator has responded to all motions and has filed requests for consideration of additional evidence. We deny all motions and requests filed in connection with this proceeding. We agree that the erroneous admission of the hearsay by the panel warrants our conclusion set forth above that certain findings by the panel are not supported by clear and con-

vincing evidence. However, the respondent's assertion that the final report should be set aside is without merit.

We, like the panel, agree that the evidence of record does not support the request of the Disciplinary Administrator for disbarment. However, based upon our findings and conclusions, we are convinced that indefinite suspension is warranted. In reaching this conclusion we have considered the respondent's past record of two prior admonitions, two public/published censures, and one indefinite suspension.

IT IS THEREFORE ORDERED that Kenneth P. Seck be and he is hereby indefinitely suspended from the practice of law in the State of Kansas commencing on the date of this opinion.

IT IS FURTHER ORDERED that the respondent shall forthwith comply with Supreme Court Rule 218 (1997 Kan. Ct. R. Annot. 235) and pay the costs of this action, and that this order be published in the official Kansas Reports.

LOCKETT and LARSON, JJ., not participating.

GARY W. RULON, J., and RICHARD W. WAHL, Senior Judge, assigned.