No. 83,684

In the Matter of KIMBERLEY K. KELLOGG (now Gepford),
*Respondent.*
(4 P.3d 594)

Opinion filed April 21, 2000.

*Marty M. Snyder,* deputy disciplinary administrator, argued the cause, and *Stanton A. Hazlett,* disciplinary administrator, was with her on the formal complaint for the petitioner.

*John H. Fields,* of Kansas City, argued the cause for respondent, and *Kimberley K. Kellogg,* respondent, argued the cause pro se.

*Per Curiam:* This is a contested original proceeding in discipline against the respondent, Kimberley K. Kellogg (now Gepford), an attorney admitted to the practice of law in the state of Kansas whose address is in Leawood, Kansas.

In a five-count complaint by the Disciplinary Administrator, respondent was charged with numerous ethical violations.

Respondent admitted some of the facts and several violations, but disputed many of the facts and most of the allegations of violations.

A hearing panel of the Kansas Board for Discipline of Attorneys heard evidence and made the following findings of fact by clear and convincing evidence:

"COUNT I—Case No. A7063 [AuBuchon]

"2. Kathryn AuBuchon (now Stang) retained respondent in October, 1996, to file a divorce action against her husband, who was a convicted felon, on probation, residing in . . . Texas. The divorce action was filed on October 28, 1996. In a 'New Client Information Form' filled out at the outset of the representation, the client did not furnish the spouse's Texas address. . . . It appears that the spouse's address was not furnished until January, 1997.

"3. The evidence is conflicting as to why service of process was not initiated immediately following the filing of the divorce action. By the more believable testimony it appears the client wanted to pursue negotiations personally with the husband regarding a settlement agreement and that she felt that service of summons would be a negative factor in such process. It was not until negotiations

broke down that complainant instructed respondent to obtain service on her husband in Texas. . . .

"4. Respondent initiated proceedings to obtain service in Texas on or about January 13, 1997. Due to procedural errors by respondent and her staff, the service initially requested was not obtained. A second effort at service of summons was initiated by respondent on or about February 12, 1997, and service was obtained in Texas on March 17, 1997. Because of the delay in service, it was necessary for respondent to reschedule the earlier divorce setting [which had been March 26, 1997] [to] May 14, 1997. The client was not informed of the need for [a] continuance until March 24, 1997, when she was able to contact respondent on her car telephone.

"5. Following the October 23, 1996, office visit the client repeatedly attempted to telephone respondent in November, but was never able to speak directly with her. Her numerous telephone messages were not returned. Her difficulty in communicating with the respondent continued throughout the representation.

"6. A default divorce hearing was held on May 14, 1997, and the Decree included child custody and support provisions. Following the hearing, the client repeatedly left messages with respondent's office asking that she be provided a certified copy of the Decree in order that she might initiate child support collection procedures, but the client never heard back from the respondent. The client ultimately had to go to the office of the Clerk of the District Court and obtain a copy of the Decree in order to initiate the collection of child support.

"7. The respondent claims a physical condition impaired her ability to represent clients commencing in April, 1997, but she failed to withdraw from the subject representation or give the client a choice in that regard."

In the AuBuchon matter, the panel found violations of KRPC 1.1 (1999 Kan. Ct. R. Annot. 284) (competence) based on respondent's failure to properly initiate and effect out-of-state service in a rather routine area of practice; 1.4 (1999 Kan. Ct. R. Annot. 303) (communication) based on the client's difficulty in communicating with respondent throughout the representation and her failure to respond to the client's telephone messages "on numerous occasions;" 1.16 (1999 Kan. Ct. R. Annot. 352) (terminating representation), stating: "Respondent was ill commencing in April, 1997, requiring surgery in December. Such condition, while offered by respondent to explain some of her shortcomings, should have caused her to withdraw from the representation, or, at the very least, caused her to offer the client a full explanation and an opportunity to seek other counsel;" 5.3 (1999 Kan. Ct. R. Annot. 384) (responsibilities regarding nonlawyer assistants), stating: "Respon-

dent attributes staff shortcomings as the cause for the mishandling of the out-of-state service of summons and other problems relating to the client's divorce proceeding. The respondent admits responsibility in such regard"; and Supreme Court Rule 207 (1999 Kan. Ct. R. Annot. 223) (failure to cooperate and respond to inquiries in a disciplinary investigation).

With regard to the Rule 207 violation, the panel stated that respondent initially failed to respond to a letter from the Disciplinary Administrator requesting a response within 10 days, and when she did respond, asked for additional time to decide whether to request a formal hearing. The hearing panel stated "waiting nearly a month to respond to a ten day letter, fell short of the cooperation required by Rule 207."

The panel found there was not clear and convincing evidence of violations of KRPC 1.3 (1999 Kan. Ct. R. Annot. 294) (diligence) and 3.2 (1999 Kan. Ct. R. Annot. 362) (expediting litigation), which were dismissed.

The panel next made the following findings of fact by clear and convincing evidence:

"COUNT II—Case No. A7150 [Davey]

"9. In December, 1995, Danice Davey retained respondent in regard to post-divorce, child residence and support matters in both Kansas and Missouri. The representation lasted approximately 21 months and respondent was paid approximately $2,800.00.

"10. The client was the residential custodian of the parties' minor child and was desiring to move to Montana following an upcoming remarriage. Home studies had revealed that she was the preferred residential parent, but not to such degree that it would overcome moving the child so far from Kansas and the visitation privileges of the former husband. A neutral counselor had recommended a change of residential custody to the father if the client should move to Montana.

"11. From the onset, the client had difficulty in communicating with the respondent. The client estimates that at least 20 telephone messages were not answered by respondent. As [a] result the client was forced to rely on written communications with the respondent, which communications, similarly, did not receive a response from respondent.

"12. On one occasion the respondent scheduled a court hearing but failed to notify opposing counsel and failed to appear at the hearing. The respondent testified that the hearing was cancelled due to mediation proceedings.

"13. The respondent failed to attend the pretrial conference in the matter but sent another attorney who had not previously been involved in the case and who was not a partner or associate of the respondent.

"14. The night before the scheduled hearing, the respondent contacted the client at home, around 9:00 o'clock p.m., and admitted that none of the witnesses suggested by the client had been contacted or subpoenaed and further that she would not be attending the hearing. In such latter regard, the respondent informed the client that she had a scheduling conflict and that she would send yet another, different, attorney to handle the custody hearing.

"15. The client had never met the new attorney, nor had an opportunity to discuss with him her desires. Most of the witnesses suggested by the client as being necessary and helpful for the hearing were not presented. The reason for such failure to use the witnesses was, in the opinion of the respondent, tactically indicated.

"16. The respondent's scheduling conflict was a criminal hearing that she had scheduled long after the custody hearing had been set.

"17. The respondent advised the client that she did not personally get along with the opposing counsel which was justification for using another lawyer for the hearing.

"18. Following the hearing, in which change of custody was denied, opposing counsel mailed a proposed journal entry to respondent on October 2, 1997, for approval. Respondent failed to act on the journal entry and the same was later filed pursuant to Rule 70 without the respondent's approving signature.

"19. The client protested the poor representation arising from the use of substitute attorneys at each of the court hearings. Respondent agreed to refund $1,300.00 of the total fee, which refund was tendered in her answer herein and paid to the client at time of hearing.

"20. Following the filing of the complaint, the Disciplinary Administrator's Office wrote the respondent on November 17, 1997, and requested that respondent make written response within ten days with a copy thereof to the investigator who would be contacting her. . . . Claiming health problems, respondent finally responded to the investigator on February 27, 1998, after four written requests by the investigating attorney, but the respondent never communicated with the Disciplinary Administrator."

In the Davey matter, the panel found violations of KRPC 1.1 (1999 Kan. Ct. R. Annot. 284) (competence) based on the respondent's use of substitute attorneys at both the pretrial hearing and the custody hearing; 1.4 (1999 Kan. Ct. R. Annot. 303) (communication), stating: "The evidence is clear that the client had difficulty in communicating with the respondent and that her telephone messages rarely received a response. . . . It also appears that respondent failed to explain the matter of evidentiary tactics

to the extent necessary to permit the client to make an informed decision;" 8.4(g) (1999 Kan. Ct. R. Annot. 399) (misconduct) based on the violations of competence and communication constituting conduct that adversely reflected on respondent's fitness to practice law; and Rule 207 (1999 Kan. Ct. R. Annot. 223) (failure to co-operate and respond to inquiries in a disciplinary investigation).

With regard to the Rule 207 violation, the panel stated that respondent had failed to respond to a letter from the Disciplinary Administrator as well as the appointed investigator and only responded after four written requests from the investigating attorney resulted in a finding that "respondent's conduct fell far short of the cooperation required by Rule 207."

The panel found insufficient evidence in the Davey complaint to support the charges of violating KRPC 1.2 (1999 Kan. Ct. R. Annot. 291) (scope of representation); 1.3 (1999 Kan. Ct. R. Annot. 294) (diligence); 1.15 (1999 Kan. Ct. R. Annot. 342) (safekeeping of property); and 8.1 (1999 Kan. Ct. R. Annot. 395) (bar admission and disciplinary matters), which were dismissed.

The panel next made the following findings by clear and convincing evidence:

"COUNT III—Case No. DA7164 [Dawar]

"22. The complainant, reportedly visually impaired, did not attend the hearing. Based upon respondent's admission and exhibits in evidence, DA Exhibit 1, pp 44-57, the panel finds as follows.

"23. The complainant, Nancy Dawar, retained respondent in February, 1997, to represent her in a divorce action. The client paid a $700.00 retainer at that time.

"24. During the next month, the client was concerned that her husband had frozen their adult daughter's bank accounts and that he and his family were stalking and harassing her. She repeatedly telephoned the respondent's office, but could never speak with the respondent directly and her messages were never returned.

"25. A hearing regarding the bank accounts was continued twice by respondent with no communication with the client other than to request that the client stop calling the respondent's office. On or about March 23, 1997 the client terminated the representation and requested a refund of unearned retainer and that her files be sent to her new attorney.

"26. Not having received an accounting of time or refund of retainer or file materials, the client filed a complaint with the Kansas City Metropolitan Bar

Association Fee Dispute Committee. (DA Exhibit I, pages 44- 57). The investigator for the Kansas City Metropolitan Bar Association concluded that the respondent had, in fact, attempted to overcharge the client which overcharge was quite apparent from the erroneous time accounting. . . . The Kansas City Metropolitan Bar Association concluded that the respondent should refund $300.00 which refund has been made.

"27. The Kansas City Metropolitan Bar Association further concluded that, following termination of the respondent's services, the client['s] new attorney made numerous attempts to obtain file materials from the respondent and that respondent was unresponsive but finally furnished the file materials over an extended period of time in a piece meal fashion."

In the Dawar matter, the panel found violations of KRPC 1.4 (1999 Kan. Ct. R. Annot. 303) (communication) based on a failure to communicate as well as on the "aggravated situation in which the client, apparently driven by frustration, made repeated calls to the respondent and was ultimately asked by respondent to stop calling altogether;" 1.5 (1999 Kan. Ct. R. Annot. 312) (fees), stating: "Respondent was terminated from the February, 1997, employment on or about March 23, 1997, at which time the claimant requested a refund of unearned retainer. Respondent refused such request and actually claimed that she was owed an additional $350.00. She supported such claim with an itemized billing work sheet which was, on its face, replete with overcharges, both as to the initial conference charge and numerous fractional hourly charges;" 1.16(d) (1999 Kan. Ct. R. Annot. 352) (declining of terminating representation) based on respondent's failure to timely return the client's file materials following termination of the representation despite repeated telephone and facsimile requests; and 8.4 (1999 Kan. Ct. R. Annot. 399) (misconduct), stating that, cumulatively, respondent's violations in the Dawar matter portrayed a pattern of conduct which adversely reflected on her fitness to practice law.

The panel found insufficient evidence to support the charges that Dawar violated KRPC 1.3 (1999 Kan. Ct. R. Annot. 294) (diligence); 1.15 (1999 Kan. Ct. R. Annot. 342) (safekeeping of property); and 1.6 (1999 Kan. Ct. R. Annot. 317) (confidentiality of information), and those charges were dismissed.

The panel next made the following findings by clear and convincing evidence:

"COUNT IV—Case No. DA7286 [Barnett]

"29. Erica Barnett hired respondent in April, 1998, for representation in a traffic violation matter. The traffic ticket in question was $120.00 and the respondent's fee was quoted as $75.00. The client paid the full $195.00 to respondent.

"30. The respondent failed to appear at the May 6 court date and never notified the client or the court that she would not be appearing. On May 8 the client received a notice from the court citing her failure to appear, imposing additional fines, and giving her five working days to resolve the matter before a warrant for her arrest was issued.

"31. The client immediately began trying to reach the respondent. However, her calls were never accepted by respondent and her messages were never returned. She finally had to take time off work to go before the judge on May 14 to explain the situation. She had to pay all the fines a second time because respondent had kept the full $195.00 and had not forwarded the fine to the court.

"32. On May 14 the client wrote a letter of complaint to the Disciplinary Administrator. On May 20 the Disciplinary Administrator's Office sent a letter to respondent requesting a written response within ten days. No written response was ever provided to the Disciplinary Administrator's Office or to the investigator appointed in the matter.

"33. On May 22 the client wrote to respondent accusing her of failing to appear in court and demanding her payment back in full.

"34. On May 29, after receiving notice of the disciplinary complaint, respondent wrote to the client apologizing for her failure to appear and claiming to enclose a check. However, no check was enclosed with the letter.

"35. On June 4 Ms. Barnett filed an action against respondent in small claims court incurring $19.50 in court costs. After she was served with summons, respondent wrote to the client on June 9, again apologizing, and this time enclosing a check for $195.00.

. . . .

"37. The respondent should be ordered to refund to the client the sum of $19.50 representing court costs expended in the small claims action which should have never been necessary."

In the Barnett matter, the panel found violations of KRPC 1.1 (1999 Kan. Ct. R. Annot. 284) (competence) for respondent's failure to appear on behalf of the client; 1.3 (1999 Kan. Ct. R. Annot. 294) (diligence) (which is admitted); 1.4 (1999 Kan. Ct. R. Annot. 303) (communication); 5.3 (1999 Kan. Ct. R. Annot. 384) (responsibilities regarding nonlawyer assistants) based on respondent's professional responsibility for shortcomings in her staff which con-

tributed to the violations in this matter; 8.4 (1999 Kan. Ct. R. Annot. 399) (misconduct) based on the several violations cumulatively showing a pattern of conduct and negligence adversely reflecting on respondent's fitness to practice law; and Rule 207 based on her failure to respond to the letter of the Disciplinary Administrator.

The panel found insufficient evidence in the Barnett complaint of a violation of KRPC 1.15 (1999 Kan. Ct. R. Annot. 342) (safekeeping of property) and found that while the client was slow in returning the unearned fee, the claimed violation of 1.16 (1999 Kan. Ct. R. Annot. 352) (declining or terminating representation) more properly fell under the violation of 1.1 and 1.3. The charges regarding KRPC 1.15 and 1.16(d) were dismissed.

The panel next made the following findings by clear and convincing evidence:

"COUNT V—Case No. DA7391 [McClelland]

"38. Respondent was engaged to represent Diana McClelland in regard to [a] potential charge of violat[ing] KSA 21-4214(b)(1) involving fraud in obtaining prescription drugs in October, 1997. Charges were ultimately filed on December 6, 1997.

"39. Respondent recommended an application for diversion and the client completed the diversion form and submitted the same to respondent, with the required filing fee, on or about January 23, 1998. (DA Exhibit N, pages 70-73).

"40. Respondent and client appeared in court on January 9, 1998, and entered a plea of not guilty. Respondent and client next appeared in court on January 15, 1998. On February 16, 1998, the court docket indicated 'diversion being applied for'. At the next scheduled hearing respondent appeared without the client being present, at which time the next hearing in the matter was scheduled for May 1, 1998. Respondent and client failed to appear on May 1, 1998, and [a] bench warrant issued. (DA Exhibit O).

"41. Respondent admits fault for failing to appear on May 1, 1998, thus causing [a] warrant for the client's arrest to issue. While respondent claims she notified client of the warrant and advised her to surrender, the panel does not find such claim credible, especially in light of a history of failing to communicate with the client and the respondent's admission that she was out of the office most of April.

"42. The panel finds that the client was not notified of the May 1 hearing or of the resulting warrant for her arrest. As the result of the arrest warrant, client and her family were frightened by representatives of the bonding company and suffered understandable emotional distress. Being unable to communicate with the respondent, the client turned herself in and served 14 hours in jail until she could

arrange a new bond, all without any contact with or assistance from the respondent."

In the McClelland matter, the panel found violations of KRPC 1.1 (1999 Kan. Ct. R. Annot. 284) (competence) based on respondent's failure to personally docket and appear at a critical court hearing or to notify the client of such hearing; 1.3 (1999 Kan. Ct. R. Annot. 294) (diligence); 1.4 (1999 Kan. Ct. R. Annot. 303) (communication) based on respondent's failure to keep the client advised as to the status of the matter, especially as to the May 1, 1998, hearing; 1.16 (1999 Kan. Ct. R. Annot. 352) (declining or terminating representation), stating: "The respondent relies on personal health problems to explain, if not excuse, her violations. By doing so, she falls squarely under KRPC 1.16(a)(2) which dictates that, in such circumstance, she should have withdrawn from the representation"; and 8.4 (1999 Kan. Ct. R. Annot. 399) (misconduct) based on her overall conduct in the McClelland matter adversely reflecting on her fitness to practice law.

The panel next made the following findings as to Mitigating or Aggravating Circumstances.

"44. Mitigation:

"(a) Absence of dishonest motive.

"(b) Physical activity—While the respondent suffered physical problems intermittently during the time period in question, such resulting disability is not considered a strong mitigating circumstance since the respondent continued to carry on her full practice during such times and failed to inform her clients in such regard or offer the clients an opportunity to engage other counsel.

"(c) Remorse—While respondent freely admitted a number of instances of failing to appear, substituting attorneys, lack of competence, failure to return client files, failure to communicate and the like, at the same time she offered excuses ranging from inefficient staff through personal illness. In addition, she stressed that some of the clients had not really suffered any monetary loss or other change of position or had, by their own negligence, contributed to their problems.

"At the hearing, the respondent continuously 'sparred' with the Disciplinary Administrator by giving unresponsive and argumentative answers which on several occasions prompted admonitions from the panel.

"In summary, the panel finds that the respondent's attitude was not one of total cooperation during the hearing process and that she fell far short of a full and free acknowledgement of her transgressions or of serious remorse.

"45. Aggravation;

"(a) Prior disciplinary offenses—While respondent has no prior Kansas disciplinary offenses, the respondent had four adjudged disciplinary offenses in Missouri in 1997 and 1998, which offenses were strikingly similar to the instant complaints.  . . .

"(b) Pattern of misconduct—The above findings show a clear and consistent pattern of misconduct.

"(c) Multiple offenses — The above findings show multiple offenses of a similar nature.

"(d) Refusal to acknowledge wrongful nature of conduct—As noted above in Mitigation (c) Remorse, the respondent only conditionally acknowledged the wrongful nature of her conduct.

"(e) Vulnerability of victims—While the involved clients were intelligent young ladies, they were nonetheless totally dependent on respondent in the subject representations and quite vulnerable therein.

"(f) Substantial experience in the practice of law—Respondent had more than sufficient experience in the practice of law to avoid the offenses cited herein.

"(g) Indifference to making restitution—While restitution has been made in several of the subject complaints under conditions bordering on indifference, the panel cannot find this to be a strong aggravating circumstance."

## The panel made the following Recommendation for Discipline:

"In recommending discipline, the panel reviewed the Standards for Imposing Lawyer Sanctions issued by the American Bar Association. The panel is especially concerned in regard to the pattern of misconduct shown by the multiple complaints both in Missouri and Kansas, all of which, taken together, cause serious concern as to the respondent's fitness to continue the practice of law. Based upon clear and convincing evidence of the enumerated violations, it is the recommendation of the panel that respondent be suspended from the practice of law for 2 years and that imposition of such discipline be deferred under the following conditions:

"(a) Respondent shall continue to have a full-time lawyer associate or partner and shall maintain a competent non-lawyer staff to assure against failing to communicate with clients, failing to docket appearance dates, and other professional responsibilities of an attorney.

"(b) Respondent shall control client intake so as to not overtax her office capacity to responsibly serve all clients at all times.

"(c) Respondent shall identify her trust account by including the words 'Trust Account' in the bank account title.

"(d) Respondent shall maintain professional liability insurance with proof thereof to be furnished to the Disciplinary Administrator on an annual basis.

"(e) Failure of respondent to comply with the above conditions or respondent's violation of the Kansas Rules of Professional Conduct within a two year period from the date of imposition of discipline shall immediately, and automatically,

impose the discipline of two year suspension, to run from [the] date of such violation of condition of probation.

"Costs are assessed against respondent in an amount to be certified by the Disciplinary Administrator."

Although respondent admits to violating KRPC 1.3 (diligence) in the Barnett and McClelland complaints and 1.4 (communication) in the Barnett complaint, she asserts the panel's other findings of violations are not supported by clear and convincing evidence and contends the discipline imposed should be limited to published censure.

Our standard of review in disciplinary cases was set forth in *In re Seck*, 263 Kan. 482, 489, 949 P.2d 1122 (1997), as follows:

"Attorney misconduct must be established by substantial, clear, convincing, and satisfactory evidence. [Citation omitted.] This court has the duty in a disciplinary proceeding to examine the evidence and determine for itself the judgment to be entered. *In re Carson,* 252 Kan. 399, 406, 845 P.2d 47 (1993). Although the panel's report is advisory only, it should be given the same dignity as a special verdict by a jury, or the findings of a trial court, and will be adopted where amply sustained by the evidence, or where it is not against the clear weight of the evidence, or where the evidence consists of sharply conflicting testimony. 252 Kan. at 406. Therefore, this court should examine the disputed findings of fact and determine whether they are supported by the evidence."

We will look to each complaint to determine if clear and convincing evidence supports the panels findings. In doing this, we will not restate the entire record which shows substantial competent evidence to support the panel's findings with few exceptions.

## Count I, AuBuchon

KRPC 1.1 (1999 Kan. Ct. R. Annot. 284) (competence) requires that "[a] lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." Respondent failed to demonstrate the above attributes of competence by failing to properly achieve service. She told a secretary to obtain service without proper instructions and signed an erroneous request for service. There is substantial competent evidence of this violation.

KRPC 1.4 (1999 Kan. Ct. R. Annot. 303) (communication) requires a lawyer to keep a client reasonably informed about the status of a matter, promptly comply with reasonable requests for information, and explain a matter so the client may make informed decisions regarding the representation. The record reflects respondent returned messages "every now and then" and, after the divorce was granted, AuBuchon testified she called at least 10 times to request a certified copy of the decree and never heard from respondent. The evidence clearly supports this violation.

KRPC 1.16(a)(2) (1999 Kan. Ct. R. Annot. 352) (terminating representation) requires an attorney to withdraw from representation when a mental or physical condition materially impairs the attorney's ability to represent the client. There was testimony of respondent's physical problems during mid-1997 and a back injury in early 1998, but these should not have affected the representation at the time it began and when service was erroneously attempted. This violation is not supported by clear and convincing evidence.

KRPC 5.3 (1999 Kan. Ct. R. Annot. 384) (responsibility for non-lawyer assistants) requires a lawyer to make reasonable efforts to ensure that a nonlawyer assistant's conduct and training is compatible with the lawyer's obligation and may be violated by a lack of training. *In re Apt*, 263 Kan. 210, 214, 946 P.2d 1002 (1997). This may explain the first service failure or it may have resulted from allowing the secretary to fill out a blank service form after respondent had signed it. In either instance, the evidence showed KRPC 5.3 was violated.

Finally, with regard to Rule 207 (1999 Kan. Ct. R. Annot. 223) (cooperation with a disciplinary investigation), it is clear the month's delay in responding to a 10-day letter supports this finding of this violation.

## Count II, Davey

With regard to KRPC 1.1 (1999 Kan. Ct. R. Annot. 284) (competence), respondent's actions in having different attorneys not previously involved appear at the pretrial hearing and trial without prior approval of the client is inexcusable. Although it is unlikely that the last minute substitutions of attorneys affected the outcome

for the client in this case, requiring the client to face the hearing with unfamiliar counsel was grossly inappropriate and clearly shows a lack of competence on respondent's part.

Likewise, the evidence is clear and convincing that respondent violated KRPC 1.4 (1999 Kan. Ct. R. Annot. 303) (communication) by not returning calls and not informing the client until 9 p.m. the night before the hearing that she had a conflict (scheduled after the custody hearing was scheduled) and that substitute counsel would be appearing in her place. This whole scenario is appalling to the court.

The violation of KRPC 8.4 (1999 Kan. Ct. R. Annot. 399) (misconduct) is also shown as respondent's actions clearly constitute conduct adversely reflecting on her fitness to practice law.

Respondent failed to respond to the Disciplinary Administrator's communications as to this complaint despite the letter setting forth specific rules and reported cases requiring an attorney to do so, and a violation of Rule 207 is clearly shown.

## Count III, Dawar

The complainant was unable to appear and her written complaint was ordered stricken from the record as being hearsay. The panel report states the charge of failure to communicate was admitted, but those portions of the complaint were denied by the respondent.

The evidence clearly showed a billing statement that was grossly inaccurate and excused by respondent as being prepared by a third party. This is not a valid excuse. Although the fee dispute was resolved by the bar-sponsored fee resolution procedure, respondent's actions clearly show a violation of KRPC 1.5 (1999 Kan. Ct. R. Annot. 312) (fees). The billing sent was excessive and contained admitted errors. The record on this charge, despite the absence of testimony by Dawar, upholds the finding of this violation.

However, as to the remaining charges regarding KRPC 1.4 (1999 Kan. Ct. R. Annot. 303) (communication), 1.16 (1999 Kan. Ct. R. Annot. 352) (terminating representation), and 8.4 (1999 Kan. Ct. R. Annot. 399) (misconduct), we hold the testimony of respondent, in the absence of any testimony by Dawar, is insufficient to show

clear and convincing evidence of such alleged violations in this count.

### Count IV, Barnett

Respondent has admitted to violations of KRPC 1.3 (1999 Kan. Ct. R. Annot. 294) (diligence) and 1.4 (1999 Kan. Ct. R. Annot. 303) (communication) of this count and the evidence relating thereto need not be restated.

As to the claimed violation of KRPC 1.1 (competence), respondent failed to appear at a scheduled court date and never notified the client of her failure. She admitted that Barnett's case "fell through the cracks." There was sufficient evidence to support the panel's finding as to this charge.

Respondent attempted to explain and excuse the failure to docket Barnett's court date and the failure to enclose a refund check in a letter of apology (resulting in Barnett having to sue respondent in small claims court) as being the result of errors by her support staff. This results in a violation of KRPC 5.3 (1999 Kan. Ct. R. Annot. 384) (responsibility for nonlawyer assistants). Respondent even said, "I'm the attorney, so I know I'm responsible." This conduct and testimony, considered along with the other admitted violations on this count, is likewise sufficient to support a violation of KRPC 8.4 (1999 Kan. Ct. R. Annot. 399) (misconduct), for it reflects adversely on respondent's fitness to practice law.

There is a letter admitted as a part of exhibit 40 which shows, as to this complaint, the respondent did reply to the Disciplinary Administrator's initial letter. We hold there is not clear and convincing evidence that Rule 207 was violated.

### Count V, McClelland

In this complaint, the evidence is clear and convincing that respondent undertook a representation where misdemeanor criminal charges of altering a prescription were filed. Diversion was sought and the application was filled out, but the client was not informed of a May 1 hearing and nobody appeared. The client had called respondent's office numerous times without response.

Eventually, the client was required by bondsmen to turn herself in because a warrant for her arrest had been issued. The client ended up being in custody for 14 hours. Calls to respondent did not result in assistance. The client hired a new attorney, who promptly obtained diversion for her.

Respondent testified she was out of the office on a sporadic basis during the time of this representation and could not explain the missed court date except to say that it was a mistake on part for her.

There is clear and convincing evidence to support the panel's finding of violations of KRPC 1.1 (1999 Kan. Ct. R. Annot. 284) (competence); 1.4 (1999 Kan. Ct. R. Annot. 303) (communication); 1.16 (1999 Kan. Ct. R. Annot. 352) (declining or terminating representation); and 8.4 (1999 Kan. Ct. R. Annot. 399) (misconduct). Respondent has admitted to a violation of KRPC 1.3 (1999 Kan. Ct. R. Annot. 294) (diligence) as to this count.

We reject the respondent's arguments that it is fundamentally unfair for the panel to find that the same conduct results in the violation of more than one rule. Such is often the case and is not improper.

The Disciplinary Administrator continues to request indefinite suspension. In doing so, it is pointed out that respondent has also been subject to a finding by the Missouri Supreme Court Committee for Overseeing Ethical Conduct that she has shown "a pattern of behavior regarding representation of clients that falls below the level of professional conduct required."

The pattern of conduct shown by respondent's actions is likewise troubling to this court. We recognize the personal and physical problems which existed in 1997 and 1998, which partly explain some of her violations. We are not prepared to adopt the Disciplinary Administrator's recommendations, and instead we adopt the recommended discipline of the hearing panel, with minor changes.

IT IS THEREFORE ORDERED that the findings of fact of the hearing panel with the exceptions set forth herein be approved and

that clear and convincing evidence supports the numerous violations which have previously been enumerated in this opinion.

IT IS FURTHER ORDERED that respondent be suspended from the practice of law for a period of 2 years but that imposition of discipline be suspended and the respondent be placed on probation for a period of 2 years from the date of this order on the terms and conditions recommended by the hearing panel as hereafter set forth:

"(a) Respondent shall continue to have a full-time lawyer associate or partner and shall maintain a competent non-lawyer staff to assure against failing to communicate with clients, failing to docket appearance dates, and other professional responsibilities of an attorney.

"(b) Respondent shall control client intake so as to not overtax her office capacity to responsibly serve all clients at all times.

"(c) Respondent shall identify her trust account by including the words 'Trust Account' in the bank account title.

"(d) Respondent shall maintain professional liability insurance with proof thereof to be furnished to the Disciplinary Administrator on an annual basis.

"(e) Failure of respondent to comply with the above conditions or respondent's violation of the Kansas Rules of Professional Conduct within a two year period from the date of imposition of discipline shall immediately, and automatically, impose the discipline of two year suspension, to run from [the] date of such violation of condition of probation."

IT IS FURTHER ORDERED that the respondent shall furnish reports as to her compliance with the terms and conditions of this order to the Disciplinary Administrator at such times and intervals as established by the Disciplinary Administrator.

IT IS FURTHER ORDERED that if respondent has not previously done so that she reimburse Erica Barnett the sum of $19.50 that was incurred as court costs to recover the fee paid to the respondent.

IT IS FURTHER ORDERED that this order be published in the official Kansas Reports and that the costs of the proceeding be assessed to the respondent.