No. 96,885
No. 99,494

In the Matter of DWIGHT ALAN CORRIN, *Respondent*.

(184 P.3d 923)

Opinion filed June 6, 2008.

*Janith A. Davis*, deputy disciplinary administrator, argued the cause and was on the formal complaint for petitioner on Case No. 96,885. *Stanton A. Hazlett*, disciplinary administrator, argued the cause and was on the formal complaint for petitioner on Case No. 99,494.

*G. Craig Robinson*, of Wichita, argued the cause for respondent, and *Dwight Alan Corrin*, respondent, argued the cause pro se.

*Per Curiam*: Case No. 96,885 is an uncontested, original proceeding in discipline, and Case No. 99,494 is a contested, original proceeding in discipline, both filed by the office of the Disciplinary Administrator (ODA) against Dwight Alan Corrin, an attorney licensed to practice law in the state of Kansas since September 1980. Corrin's last registration address with the Clerk of the Appellate Courts of Kansas is Wichita, Kansas.

We first address the earlier filed Case No. 96,885.

## No. 96,885

The formal complaint as originally filed on October 22, 2004, alleged Corrin violated KRPC 1.3 (2007 Kan. Ct. R. Annot. 398), KRPC 1.4 (2007 Kan. Ct. R. Annot. 413), and Supreme Court Rule 207 (2007 Kan. Ct. R. Annot. 288). The alleged misconduct arose from two complaints, DA8733 and DA8991, which concerned the Respondent's representation of clients A.A., D.D., E.G., and A.S. The Respondent answered, admitting most of the factual allegations. He also proposed a probation plan. On April 6, 2006, a hearing on the formal complaint was held before a hearing panel of the Kansas Board for Discipline of Attorneys.

### HEARING PANEL'S FINDINGS OF FACT

The hearing panel made several separately numbered findings of fact, by clear and convincing evidence, which are reproduced in narrative form, as follows:

DA8733:

On December 4, 1998, Hospital District No. 1 of Rice County, Kansas, fired employee A.A. On May 24, 2000, A.A. retained Respondent to file suit against the hospital for her termination.

After retaining Respondent, A.A. repeatedly attempted to contact him regarding the representation. She was unable to contact Respondent.

Respondent failed to take timely action in A.A.'s behalf. On December 4, 2001, the statute of limitations expired on A.A.'s case. Respondent failed to file an action in her behalf prior to the expiration of the statute of limitations.

On November 4, 2002, A.A. filed a complaint with the Disciplinary Administrator regarding Respondent. During the disciplinary investigation, Respondent admitted that he did not adequately communicate with her.

On December 4, 2002, Respondent filed an untimely action in behalf of A.A.

In March 2004, Respondent wrote to A.A., informed her that he missed the statute of limitations, and provided his professional liability insurance information. A.A. did not file a claim against Respondent with his insurance carrier.

DA8991:

D.D., E.G., and A.S. were injured in an automobile accident in Graham County, Kansas. The attorney hired by the three women to file an action in their behalf failed to take appropriate action. Thereafter, they retained Respondent to pursue a legal malpractice action against their original attorney. On March 1, 2001, Respondent filed a professional negligence case against their original attorney.

CGU Hawkeye Security Insurance Company (CGU) paid worker's compensation benefits to Respondent's three clients and sought subrogation of these benefits. CGU hired Marion K. Newcomer to represent its interests.

Initially, Respondent and Newcomer had regular communication regarding the status of the cases. However, beginning in 2002, Respondent failed to respond to Newcomer's numerous written

and telephone requests for information. After unsuccessfully attempting to reach Respondent for more than a year, Newcomer filed a complaint with the ODA.

David Rapp, Chairman of the Wichita Bar Association, assigned Alan Joseph to investigate Newcomer's complaint. Beginning on August 28, 2003, and continuing through November 12, 2003, the ODA and Joseph sent four letters to Respondent, requesting that he forward a written response to Newcomer's complaint. Respondent did not respond to the letters, nor did he forward a written response to Newcomer's complaint.

## HEARING PANEL'S CONCLUSIONS

Based upon the findings of fact, the hearing panel concluded as a matter of law that Respondent violated KRPC 1.3, KRPC 1.4, and Kansas Supreme Court Rule 207(b). The panel's conclusions are summarized as follows:

KRPC 1.3 provides that attorneys must act with reasonable diligence and promptness in representing their clients. Respondent failed to provide diligent representation to A.A. when he failed to file a case in her behalf within the statute of limitations or provide her with timely and appropriate advice regarding the likely outcome of such a case. Because Respondent failed to act with reasonable diligence and promptness in representing A.A., the hearing panel concluded that Respondent violated KRPC 1.3.

KRPC 1.4(a) provides that a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information. Respondent failed to return A.A.'s telephone calls and failed to provide her with timely and appropriate communication regarding the status of the representation. Accordingly, the hearing panel concluded that Respondent violated KRPC 1.4(a).

The Kansas Supreme Court Rules require attorneys to cooperate in disciplinary investigations. Supreme Court Rule 207(b) provides:

"It shall be the duty of each member of the bar of this state to aid the Supreme Court, the Disciplinary Board, and the Disciplinary Administrator in investigations concerning complaints of misconduct, and to communicate to the Disciplinary

Administrator any information he or she may have affecting such matters." (2007 Kan. Ct. R. Annot. 288.)

The hearing panel concluded that Respondent violated Supreme Court Rule 207(b) by failing to provide a written response to the initial complaint filed by Newcomer.

## HEARING PANEL'S RECOMMENDATIONS

In making its recommendation for discipline, the hearing panel considered the following factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions: duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors. It stated:

"*Duty Violated and Mental State*. Respondent knowingly violated his duty to his client to provide adequate communication and diligent representation. Additionally, the Respondent knowingly violated his duty to the legal system and the legal profession to cooperate in disciplinary investigations.

"*Injury*. As a result of the Respondent's misconduct, the Respondent caused potential injury to [A.A.] and actual injury to the legal system and the legal profession."

In reaching its recommendation for discipline, the hearing panel found the following aggravating factors (any considerations that may justify an increase in the degree of discipline to be imposed) present:

"*Prior Disciplinary Offenses*. Respondent has been previously disciplined on two occasions. On January 17, 2000, the Disciplinary Administrator informally admonished the Respondent for having violated KRPC 1.3 and KRPC 1.4. On August 28, 2001, the Disciplinary Administrator again informally admonished the Respondent for having violated KRPC 1.3 and KRPC 1.4.

"*A Pattern of Misconduct*. Included in this case are two complaints. Additionally, the Respondent has previously been disciplined on two occasions. The previous cases have included violations of the rules violated in this case. Accordingly, the Respondent engaged in a pattern of misconduct.

"*Multiple Offenses*. Respondent violated KRPC 1.3, KRPC 1.4, and Kan. Sup. Ct. R. 207(b). As such, the Respondent committed multiple offenses.

"*Bad faith Obstruction of the Disciplinary Proceeding by Intentionally Failing to Comply with Rules or Orders of the Disciplinary Process*. Respondent knew that he was required to provide a written response to the complaint filed by Ms.

Newcomer. Respondent never filed such a response. The Hearing Panel, therefore, concluded that Respondent obstructed the disciplinary proceeding.

"*Substantial Experience in the Practice of Law.* The Kansas Supreme Court admitted Respondent to practice law in 1980. At the time Respondent engaged in misconduct, he had been practicing law for more than 20 years. Accordingly, the Hearing Panel concluded that Respondent had substantial experience in the practice of law at the time he engaged in the misconduct."

In reaching its recommendation for discipline, the hearing panel found the following mitigating circumstances (any considerations or factors that may justify a reduction in the degree of discipline to be imposed) present:

"*Absence of a Dishonest or Selfish Motive.* Dishonesty and selfishness were not motivating factors in this case.

"*Personal or Emotional Problems if Such Misfortunes have Contributed to a Violation of the Kansas Rules of Professional Conduct.* Prior to the time the misconduct occurred, the Respondent was divorced from his wife. The Respondent struggled emotionally following the divorce. Additionally, the Respondent has been diagnosed with clinical depression. The Respondent has been undergoing treatment for the depression for approximately 4 years. Based upon the timing of the divorce and the diagnosis of the clinical depression, the Hearing Panel concluded that the Respondent's personal and emotional problems contributed to the misconduct and are mitigating factors in this case."

In addition to the above-cited factors, the hearing panel thoroughly examined and considered the following ABA Standards regarding suspension and reprimand:

### Standard 4.42:

"Suspension is generally appropriate when:
  (a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or
  (b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client."

### Standard 4.43:

"Reprimand is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes injury or potential injury to a client."

The Deputy Disciplinary Administrator recommended that Respondent be placed on supervised probation in accordance with

the plan that Respondent submitted and pursuant to Kansas Supreme Court Rule 211(g) (2007 Kan. Ct. R. Annot. 304). Respondent recommended that the panel resolve the case without requiring that he appear before this court. Specifically, his counsel recommended that Respondent be placed on probation in conjunction with an informal admonition.

The Kansas Supreme Court rule dictates the procedure to follow when a Respondent requests probation:

"(g) Requirements of Probation

"(1) If the Respondent intends to request that the Respondent be placed on probation for violating the Kansas Rules of Professional Conduct or the Kansas Supreme Court Rules, the Respondent shall provide each member of the Hearing Panel and the Disciplinary Administrator with a workable, substantial, and detailed plan of probation at least ten days prior to the hearing on the Formal Complaint. The plan of probation must contain adequate safeguards that will protect the public and ensure the Respondent's full compliance with the disciplinary rules and orders of the Supreme Court.

"(2) If the Respondent provides each member of the Hearing Panel and the Disciplinary Administrator with a plan of probation, the Respondent shall immediately and prior to the hearing on the Formal Complaint put the plan of probation into effect by complying with each of the terms and conditions of the probation plan.

"(3) The Hearing Panel shall not recommend that the Respondent be placed on probation unless:

(i) the Respondent develops a workable, substantial, and detailed plan of probation and provides a copy of the proposed plan of probation to the Disciplinary Administrator and each member of the Hearing Panel at least ten days prior to the hearing on the Formal Complaint;

(ii) the Respondent puts the proposed plan of probation into effect prior to the hearing on the Formal Complaint by complying with each of the terms and conditions of the probation plan;

(iii) the misconduct can be corrected by probation; and

(iv) placing the Respondent on probation is in the best interests of the legal profession and the citizens of the State of Kansas." (2007 Kan. Ct. R. Annot. 306-07.)

The panel found (1) based upon Kansas Supreme Court Rule 211(g) that it was without authority to resolve the case in the manner suggested by counsel for Respondent and (2) that even if it did have the authority to do so, such resolution would be inappropriate in this case.

Based upon the findings of fact, the conclusions of law, and the ABA Standards cited above, the panel unanimously recommended that Respondent be suspended from the practice of law in the state of Kansas for a period of 2 years. The panel further recommended, however, that the imposition of the discipline be suspended, and that Respondent be placed on probation for a period of 2 years, subject to the following terms and conditions:

"1. *Supervision.* The Respondent's practice will be supervised by attorney, Mel Gregory, 355 N. Waco, Wichita, Kansas 67202, telephone number (316) 267-8181. The Respondent shall allow Mr. Gregory access to his client files, calendar, *and trust account records.* The Respondent shall comply with any requests made by Mr. Gregory. During the first six months of the period of probation, the Respondent shall meet with Mr. Gregory weekly. During the remaining period of probation, the Respondent shall meet with Mr. Gregory monthly. During the first six months of the Respondent's probation, Mr. Gregory shall prepare a monthly report to the Disciplinary Administrator regarding the Respondent's status on probation. During the remaining period of probation, Mr. Gregory shall prepare quarterly reports to the Disciplinary Administrator regarding the Respondent's status on probation. The Respondent shall pay Mr. Gregory for his time associated with the probation supervision. (Emphasis added.)

"2. *Case List.* Within 30 days of this report, the Respondent shall make a complete list of all of his cases and provide that list to the Disciplinary Administrator and Mr. Gregory.

"3. *Old Cases.* The Respondent is currently employed in the Law Office of Paul Hogan. During the hearing, the Respondent identified at least four cases that date back to a time prior to his association with Paul Hogan. On the case list that the Respondent prepares . . . , the Respondent shall identify those cases that date back to a time prior to his association with Mr. Hogan. The Respondent shall provide Mr. Gregory with weekly reports regarding these cases. The Respondent shall obtain court dates for the social security cases within 90 days of the date of this report. *The Respondent shall distribute monies held in trust that are ripe for distribution within 30 days of the date of this report.* Additionally, the Respondent shall immediately contact the Mutual of Omaha to make progress on that case or those cases. In his reports to the Disciplinary Administrator, Mr. Gregory shall specifically detail the progress made on the cases that date back to a time prior to the Respondent's association with Mr. Hogan. (Emphasis added.)

"4. *Audits.* Within 30 days of the date of this report, Mr. Gregory shall conduct an initial audit of all the Respondent's files. Thereafter, every six months, Mr. Gregory shall conduct another audit. Mr. Gregory's audits shall include, but not be limited to, determining relevant statute of limitations and other significant time deadlines and the current status of the case. After each audit, Mr. Gregory shall make a report regarding the audit. If Mr. Gregory discovers any violations of the

Kansas Rules of Professional Conduct, Mr. Gregory shall include such information in his report. Mr. Gregory shall provide the Disciplinary Administrator and the Respondent with a copy of each audit report. The Respondent shall follow all recommendations and correct all deficiencies noted in Mr. Gregory's periodic audit reports.

"5. *Office Procedures*. Within 10 days of this report, the Respondent shall provide the Disciplinary Administrator and Mr. Gregory with written office procedures designed to monitor the status, deadlines, and court appearances of all matters in which the Respondent has undertaken representation. The Respondent shall modify that procedure if directed to do so by the Disciplinary Administrator. The Respondent shall follow the written office procedures.

"6. *Psychological Treatment*. The Respondent will continue his treatment for depression with Dr. Tom Graff, throughout the period of supervised probation unless, in Dr. Graff's opinion, continued treatment is no longer necessary. Dr. Graff shall notify the Disciplinary Administrator and Mr. Gregory in the event that the Respondent discontinues treatment against the recommendation of Dr. Graff during the probationary period. The Respondent shall provide Dr. Graff with an appropriate release of information to allow Dr. Graff to provide such information to the Disciplinary Administrator and Mr. Gregory concerning the Respondent's treatment, diagnosis, and prognosis as they may request.

"7. *Trust Account*. The Respondent shall keep and maintain IOLTA trust account number 303194 at Intrust Bank, Wichita, Kansas. *If the Disciplinary Administrator or Mr. Gregory requests, the Respondent shall allow the Disciplinary Administrator or Mr. Gregory to audit the trust account.* (Emphasis added.)

"8. *Additional Continuing Legal Education*. The Respondent shall attend 4 additional hours of professional responsibility continuing legal education in the 2006-2007, the 2007-08, and the 2008-09 reporting years.

"9. *Cooperation*. The Respondent shall cooperate with the Disciplinary Administrator, including cooperating in all disciplinary investigations. If the Disciplinary Administrator requests any additional information, the Respondent shall timely provide such information. The Respondent will notify the Disciplinary Administrator and Mr. Gregory within 10 business days of any changes in the Respondent's business address or telephone number.

"10. *Professional Liability Insurance*. The Respondent shall continue to maintain professional liability insurance.

"11. *Additional Violations*. The *Respondent shall not violate the terms of his probation or the provisions of the Kansas Rules of Professional Conduct.* In the event that the Respondent violates any of the terms of probation or any of the provisions of the Kansas Rules of Professional Conduct at any time during the probationary period, the *Respondent shall immediately report such violation to the Disciplinary Administrator.* (Emphasis added.)

"12. *Costs*. Costs are assessed against the Respondent in an amount to be certified by the [ODA]. The Respondent shall pay the costs as directed by the Clerk of the Appellate Court."

We also note the following comments made by the hearing panel:

"As an aside, the Respondent's demeanor during the hearing as well as a number of statements made by the Respondent during the course of the hearing caused the Hearing Panel some concern. Specifically, on cross-examination, the Respondent testified that he and his doctors determined that he took enough medication for other ailments and, therefore, he should not take anti-depressant medication. The exchange was as follows:

'Q. Okay. Okay. In his report, Doctor Graff mentions that you still—that you still do suffer from some depression, and he mentions medications. Are you currently taking any medication right now?

'A. No, I'm not currently taking medication.

'Q. Okay.

'A. For depression.

'Q. All right.

'A. We decided that I was taking enough medication for cholesterol and blood pressure, that I was probably better off not swallowing any more pills every day.'

Whether the Respondent should or should not be taking anti-depressant medication should not turn on the number of pills the Respondent ingests on a daily basis.

"During examination by one Hearing Panel member, the Respondent testified that he finds the Mutual of Omaha 'daunting.' The exchange was as follows:

'Q. And the cases consist of a couple of Social Security cases and the case—I believe you said one where you need to resolve some liens to distribute some money.

'A. Right.

'Q. Tell me about that.

'A. Well, there—they both have Medicaid—Medicare—Medicaid liens are easy—Medicare liens.

'Q. Mm-hmm.

'A. And I have found Mutual of Omaha daunting, and I'm not—I think I'm not very good at dealing with them either.

'Q. With Mutual of Omaha?

'A. Yeah.

'Q. How long have the funds been in your trust account?

'A. Well, the one, they have been there quite a while. The other one just got settled pretty recently.

'Q. Define quite a while.

'A. I'm not sure.

'Q. Over a year?

'A. Yeah, probably, yeah. There's also—in that case, there's an added element of this is some medical bills that are about to become time barred. And so if they

don't become time barred, I'm going to try and pay them; and if they do become time barred, my client wants the money, so—(pause).

'Q. *To what extent have you communicated with your client or clients about this money that you have in the trust account?*

'A. *Well, there's a pending complaint in one of them.*' (Emphasis added.)

"In order to effectively represent his clients, the Respondent needs to be able to deal with insurance companies and others in an attempt to resolve the matters pending. If the Respondent is unable to deal with insurance companies, the Respondent should transfer the case to an attorney who is capable of handling the representation.

"Additionally, the Respondent admitted that he may have missed a statute of limitations in another case.

"Finally, during closing arguments, the Deputy Disciplinary Administrator mentioned that the Respondent has failed to cooperate in a pending disciplinary investigation.

"The Hearing Panel mentions these issues—and does not make any conclusions that the Respondent violated any provisions of the Kansas Rules of Professional Conduct in these matters—to establish that the Respondent's problems that gave rise to the misconduct in the instant case do not appear to have been resolved. In order for the Respondent's probation to be successful, the Respondent must immediately get a handle on all of the outstanding cases and make significant progress concluding these matters. If the Respondent fails to immediately resolve the four or more cases that date back to a time prior to his association with Mr. Hogan, the Hearing Panel fears that the Respondent will find himself back in the Hearing Room of the Kansas Board for Discipline of Attorneys."

## ANALYSIS

### Standard of Review

In attorney disciplinary proceedings, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties, and determines whether violations of the Kansas Rules of Professional Conduct exist. If they do, the court considers the discipline to be imposed. Any attorney misconduct must be established by substantial, clear, convincing, and satisfactory evidence. *In re Comfort*, 284 Kan. 183, 190, 159 P.3d 1011(2007); *In re Lober*, 276 Kan. 633, 636, 78 P.3d 442 (2003).

This court views the findings of fact, conclusions of law, and recommendations made by the disciplinary panel as advisory only but gives the final hearing report the same dignity as a special verdict by a jury or the findings of a trial court. Therefore, the

panel's report will be adopted where amply sustained by the evidence but not where it is against the clear weight of the evidence. When the panel's findings relate to matters about which there was conflicting testimony, this court recognizes that the panel, as the trier of fact, had the opportunity to observe the witnesses and evaluate their demeanor. This court does not reweigh the evidence or assess the credibility of witnesses. *Comfort*, 284 Kan. at 190. Rather, this court examines any disputed findings of fact and determines whether clear and convincing evidence supports the panel's findings. *In re Kellogg*, 269 Kan. 143, 153, 4 P.3d 594 (2000). If so, the findings will stand. Moreover, it is not necessary to restate the entire record to show substantial competent evidence to support the panel's findings. 269 Kan. at 153.

A hearing panel's report is deemed admitted under Supreme Court Rule 212(c) and (d) (2007 Kan. Ct. R. Annot. 316) when a respondent fails to file exceptions. *In re Boaten*, 276 Kan. 656, 663, 78 P.3d 458 (2003). Since Respondent filed no exceptions to the panel's report, we conclude that the panel's findings of fact are supported by clear and convincing evidence. We further conclude that the facts established support the panel's conclusions of law. We therefore adopt the panel's findings and conclusions. However, we withhold judgment on its final recommendation that Respondent be suspended from the practice of law for 2 years, but with the imposition of that discipline suspended, and that he be placed on probation for a period of 2 years, while we now consider Case No. 99,494.

## No.99,494

Case No. 96,885 was argued before this court on October 26, 2006. At that time, the Deputy Disciplinary Administrator advised that further problems were being discovered which might lead to other related complaints. Indeed, at the April 6, 2006, hearing, Respondent volunteered the existence of a "pending complaint" about money in his trust account. This court therefore withheld disposition in Case No. 96,885 pending further investigation of trust account problems.

On March 15, 2007, the ODA filed a second formal complaint against Respondent. That formal complaint alleged he violated KRPC 1.3, KRPC 1.4, KRPC 1.15 (2007 Kan. Ct. R. Annot. 473), KRPC 8.1 (2007 Kan. Ct. R. Annot. 553) and KRPC 8.4 (2007 Kan. Ct. R. Annot. 559), and Supreme Court Rule 207 arising out of his representation of client D.C. from 2000 through 2004. The ODA's assigned investigator, Robert Straub, conducted further investigations after the filing of an initial investigator's report by Alan Joseph of the Wichita Bar Association Ethics and Grievance Committee. Both of these investigations initially concerned only Respondent's failure to keep D.C. informed on the status of negotiations in his case and collection efforts against D.C. that resulted. However, these investigations eventually uncovered evidence of Respondent's failure to pay funds from his client trust account not only to D.C., but also to numerous other clients.

On April 24 and September 11, 2007, hearings on the second formal complaint were held before a hearing panel composed of the same members who had heard Case No. 96,885. At the April 24 hearing Respondent stipulated to the facts and rule violations alleged in the formal complaint. Respondent, however, has since filed several exceptions to the panel's final hearing report.

## HEARING PANEL'S FINDINGS OF FACT

The hearing panel made a number of findings of fact, by clear and convincing evidence, several of which were as follows:

On July 19, 2000, D.C. was involved in an automobile accident. Thereafter, D.C. retained Respondent to represent him in connection with the accident.

In behalf of D.C., Respondent filed a lawsuit in the Sedgwick County District Court. Following mediation, Respondent settled the case in behalf of D.C. for $23,000. On September 8, 2003, Respondent deposited $20,500 into his client trust account. The check for the balance of the settlement, in the amount of $2,500, was forwarded to the PIP carrier.

Respondent agreed to attempt to negotiate with the medical care providers to reduce D.C.'s financial obligations. Primarily, his medical providers included a chiropractor and a neurosurgeon. The

obligation to the chiropractor was approximately $13,000. Respondent agreed to attempt to reduce the obligation to $5,000.

Following the settlement of the case, D.C. and his spouse repeatedly contacted Respondent for information regarding the settlement proceeds. Respondent failed to keep D.C. advised regarding the status of settlement attempts. The medical care providers sued D.C., obtained a judgment, and garnished his tax refunds.

On May 28, 2004, D.C. and his spouse filed a complaint against Respondent. Allan Joseph was assigned to investigate the complaint.

On June 10, July 26, and August 26, 2004, Joseph wrote to Respondent and requested that Respondent provide a written response to the complaint. Respondent failed to respond to these requests from Joseph for information. In addition to the three letters, Joseph also left several telephone messages at Respondent's office. Respondent failed to return Joseph's telephone messages. Accordingly, on November 3, 2004, Joseph filed his report with no input from Respondent.

ODA investigator Straub was then assigned to conduct an additional investigation regarding D.C.'s complaint. Straub sought to learn why the $20,500 from the D.C. settlement had not been distributed from Respondent's trust account. Straub contacted Respondent and conducted an interview.

Respondent advised Straub that he was holding the settlement proceeds until the time period in which the chiropractor could sue D.C. had expired. Respondent also claimed that there was a Medicare lien issue which needed to be resolved prior to the distribution of the funds. He asserted that the "time limit" for the chiropractor would expire on October 29, 2006. However, as of April 24, 2007, the date of the first panel hearing concerning the trust account complaint, the funds had still not been distributed by Respondent to D.C.

In addition to investigating Respondent's failure to distribute the D.C. settlement proceeds, on June 20, 2006, Straub also conducted a general audit of Respondent's client trust account. Respondent had very few records available for Straub to examine, but they showed that the account balance was $54,277.94, which included

D.C.'s settlement proceeds. Respondent was unable to identify who was entitled to all of the funds that were being held in his account, explaining that his computer "crashed" and that all the information regarding ownership of the funds was on his computer.

On June 26, 2006, Straub wrote to Respondent and requested that Respondent explain who owned the funds besides D.C. and why the funds had not been distributed. Straub requested that the explanation be provided by July 14, 2006. Respondent did not provide a written explanation by July 14, 2006.

On July 28, 2006, Respondent wrote to Straub and informed him that he could not identify ownership of the funds. He blamed his inability to identify the ownership of the funds in his trust account on the software he used to keep track of the funds.

On September 19, 2006, Straub sent a letter to Respondent in which he requested that Respondent provide bank statements, deposit slips, cancelled checks, a check register, and client ledgers with respect to the nearly $34,000 in Respondent's client trust account over and above the D.C. settlement proceeds. In addition, Straub scheduled an appointment with Respondent for September 28, 2006, at Respondent's office to view the documents requested.

On September 28, 2006, Straub met with Respondent in Respondent's office. However, Respondent failed to provide the requested information. He again advised Straub that his failure to provide the document was due to fact that his computer "crashed."

On November 8, 2006, an investigator from the ODA served Respondent with a subpoena requiring Respondent to deliver his computer to the ODA. After Respondent's computer was delivered to the ODA, Straub and Craig Senne, another investigator with the ODA, together with J.K., Respondent's former employee, were able to identify a list of clients and individual client trust balances. The total amount of funds for which Straub, Senne, and J.K. were able to identify ownership from the recovered computer records approximated $33,777.94.

On December 22, 2006, Straub again wrote to Respondent to state that Straub and Senne had obtained a list of clients and balances that appeared to explain the unidentified funds in Respondent's trust account. Respondent was provided with the list of the

client names and amounts. Straub requested that Respondent provide information regarding those clients and funds by January 24, 2007.

Responding on January 22, 2007, Respondent wrote that he was making progress but that he needed the computer returned to determine which of the money belonged to Respondent and which funds belonged to his clients.

On January 26, 2007, the investigators returned the computer to Respondent and again requested that Respondent provide information and documentation regarding the funds held in his client trust account.

Less than 2 months later, on March 15, 2007, without the information from Respondent, the Disciplinary Administrator filed a formal complaint. On April 17, Respondent filed a response. The hearing panel scheduled the hearing for April 24, 2007.

The day before the hearing, on April 23, counsel for Respondent forwarded documents to the Disciplinary Administrator that were later admitted at the hearing as Respondent's Exhibits A through E. These exhibits included clients' names and amounts of money held in trust by Respondent. According to Respondent's Exhibit E, he continued to hold $6,285.03 in trust for his clients. Additionally, he identified $15,223.10 of the held money as his own. Further, Respondent believed that $10,725.00 of the money held belonged to both him and his clients. Finally, he was unable to identify ownership of $2,219.28 of the held funds. He did not offer evidence as to the reason his personal funds remained in the trust account.

As of April 24, 2007, the balance in Respondent's client trust account was $54,271.20. With the exception of an August 2, 2006, check for $6.74, no transactions had occurred after September 8, 2003, when Respondent had deposited $20,500 of the D.C. settlement funds.

On April 24, 2007, the hearing panel convened. Respondent stipulated to violating: KRPC 1.4 for failing to respond to requests for information from client D.C.; KRPC 1.15(a) for failing to have complete records of his client trust account and for commingling his funds with those of his clients; KRPC 1.15(b) for failing to

distribute funds to clients when the clients were entitled to receive such funds; KRPC 8.4(g) for failing to properly administer his trust account; Kansas Supreme Court Rule 207 for failing to cooperate with an attorney appointed to conduct an investigation and for failing to cooperate with an investigator from the ODA.

After the evidence had been presented and arguments had been made, the hearing panel began deliberations. During deliberations, the panel decided to enter an interim order and provide Respondent with the opportunity to disburse the monies held in behalf of clients. The panel incorporated the seven-page interim order by reference. That interim order, dated April 25, 2007, required several actions by Respondent, and among other things stated: "The monies held in Respondent's client trust account should have been distributed long ago. In order to insure that the Respondent *immediately distributes* the monies held in trust to the appropriate parties, the Hearing Panel enters this order." (Emphasis added.) Besides D.C.'s settlement proceeds, the order also listed categories of the remaining funds: (1) $6,285.03 identified by Respondent as held in trust owed to 19 named clients; (2) $15, 223.10 identified by Respondent as held in trust which belonged to him for expenses paid and attorney fees earned by him from 23 named clients; (3) $10,725 identified by Respondent as "shared" by 6 named clients and Respondent; (4) $2,219.28 identified by Respondent "for which he is uncertain of the owner of the funds."

On May 15, 2007, Respondent forwarded $12,249.24 to D.C. for his share of the settlement, as well as $2,988.30 in interest. Respondent also distributed $15,223.10 to himself.

On May 30, in June, and again on July 23, 2007, counsel for Respondent provided updates regarding the ordered distribution of funds.

On July 24, 2007, the Disciplinary Administrator wrote to counsel for Respondent, raising concerns and requesting a response by Respondent. He directed Respondent to distribute the money held on behalf of clients. Respondent never addressed the concerns raised in the Disciplinary Administrator's letter, nor did he make any distributions to clients, other than the distribution made to D.C. on May 15, 2007.

On September 11, 2007, the panel reconvened. Evidence established that Respondent failed to comply with the interim order of April 25, 2007, by failing to distribute monies held in behalf of Respondent's clients J.B.1, J.B.2, C.C., J.D., H.K., T.M., M.P., J.R., S.S., J.S., T.B., G.L., E.E. and C.E., L.M., D.H., C.N., R.O., B.L., and C.S. Additionally, Respondent failed to determine whether the $7,500 held on behalf of A.W. actually belonged to A.W. or to M.N. and failed to appropriately distribute the funds. Finally, on the "uncertain ownership funds," Respondent failed to determine whether C.R. was owed $1,947.28, failed to determine whether K.M. was owed $272, and failed to appropriately distribute those funds.

## HEARING PANEL'S CONCLUSIONS

Based upon the Respondent's stipulations, the hearing panel concluded as a matter of law that he violated KRPC 1.4(a), KRPC 1.15(a), KRPC 1.15(b), KRPC 8.4(g), and Kansas Supreme Court Rule 207(b). The panel's conclusions are summarized as follows:

As noted, KRPC 1.4(a) provides that "[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information." (2007 Kan. Ct. R. Annot. 413.) Respondent violated KRPC 1.4(a) when he failed to respond to requests for information from D.C. and his spouse. Accordingly, the hearing panel concluded that Respondent violated KRPC 1.4(a).

Attorneys must safeguard client's property. KRPC 1.15(a) prohibits attorneys from commingling their funds with the funds of their clients, as follows:

"A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state of Kansas. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation." (2007 Kan. Ct. R. Annot. 473-74.)

Respondent violated KRPC 1.15(a) when he commingled funds belonging to him with funds belonging to clients. Respondent's late

payment of the funds belonging to himself after the April 24, 2007, hearing does not satisfy the prohibition against commingling, particularly when considered with the failure to remit to clients the amounts owed them. Additionally, Respondent violated KRPC 1.15(a) when he failed to keep complete records of his client trust account. Accordingly, the hearing panel concluded that Respondent violated KRPC 1.15(a).

Attorneys must promptly deliver funds to clients when the clients are entitled to receive the funds. KRPC 1.15(b) provides the following requirement in this regard:

"Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive . . . ." (2007 Kan. Ct. R. Annot. 474.)

The panel concluded that Respondent violated KRPC 1.15(b) when he failed to promptly deliver funds to D.C. when D.C. was entitled to receive them, and that Respondent also violated KRPC 1.15(b) when he failed to promptly distribute client funds to 20 other clients.

KRPC 8.4(g) provides: "It is professional misconduct for a lawyer to . . . engage in any other conduct that adversely reflects on the lawyer's fitness to practice law." (2007 Kan. Ct. R. Annot. 560.) The panel concluded that Respondent's failure to properly administer his trust account adversely reflects on Respondent's fitness to practice law and that he therefore violated KRPC 8.4(g).

A lawyer must cooperate in disciplinary investigations. As noted, Kansas Supreme Court Rule 207(b) requires:

"It shall be the duty of each member of the bar of this state to aid the Supreme Court, the Disciplinary Board, and the Disciplinary Administrator in investigations concerning complaints of misconduct, and to communicate to the Disciplinary Administrator any information he or she may have affecting such matters." (2007 Kan. Ct. R. Annot. 288.)

Respondent knew that he was required to forward a written response to the initial complaint—he had been instructed to do so in writing repeatedly. Additionally, Respondent knew that he was

required to cooperate with Straub in connection with the examination of his trust account. Respondent failed to provide Straub with requested information. The panel concluded that because Respondent knowingly failed to provide a written response to the initial complaint filed by D.C and his spouse and because Respondent failed to cooperate with Straub, Respondent violated Kansas Supreme Court Rule 207(b).

## HEARING PANEL'S RECOMMENDATIONS

In making its recommendation for discipline, the hearing panel considered the following factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions, stating:

"*Duty Violated*. The Respondent violated his duty to his client to safeguard his client's property. Additionally, the Respondent violated his duty to his client to provide adequate communication. Finally, the Respondent violated his duty to the profession to cooperate in the investigation.

"*Mental State*. The Respondent knowingly violated his duties.

"*Injury*. As a result of the Respondent's misconduct, the Respondent caused actual harm to [D.C.] and other clients."

In reaching its recommendation for discipline, the hearing panel found the following aggravating factors present:

"*Prior Disciplinary Offenses*. The Respondent has been previously disciplined on two occasions. On January 17, 2000, the Disciplinary Administrator informally admonished the Respondent for having violated KRPC 1.3 and KRPC 1.4. On August 28, 2001, the Disciplinary Administrator again informally admonished the Respondent for having violated KRPC 1.3 and KRPC 1.4. Additionally, currently two cases, DA8733 and DA8991, are pending before the Kansas Supreme Court. In that case, the Hearing Panel concluded that the Respondent violated KRPC 1.3, KRPC 1.4, and Kan. Sup. Ct. R. 207. The Court placed the case on hold pending the hearing in the instant case.

"*A Pattern of Misconduct*. The Respondent engaged in a pattern of misconduct with regard to his client trust account. For an extended period of time, the Respondent failed to develop and maintain adequate records of his client trust account. The Respondent failed and to the date of the last hearing continued to fail to distribute money owed to his clients from the client trust account. Accordingly, the Respondent engaged in a pattern of misconduct.

"*Multiple Offenses*. The Respondent violated KRPC 1.4, KRPC 1.15(a), KRPC. 1.15(b), KRPC 8.4(g), and Kan. Sup. Ct. R. 207. As such, the Respondent committed multiple offenses.

"*Vulnerability of Victim.* [D.C. and his spouse] and [other] clients . . . were vulnerable to the Respondent's misconduct.

"*Substantial Experience in the Practice of Law.* The Kansas Supreme Court admitted the Respondent to practice law in 1980. At the time the Respondent engaged in misconduct, the Respondent had been practicing law for a period of more than 25 years. Accordingly, the Hearing Panel concludes that the Respondent had substantial experience in the practice of law at the time he engaged in the misconduct.

"*Indifference to Making Restitution.* To date, the Respondent has taken no steps over an extended period of time to return money held in his client trust account to his clients, other than to [D.C.]."

In reaching its recommendation for discipline, the hearing panel found the following mitigating circumstances present:

"*Personal or Emotional Problems if Such Misfortunes have Contributed to a Violation of the Kansas Rules of Professional Conduct.* The Respondent suffers from depression. The Respondent testified that his lack of cooperation with Mr. Joseph's investigation occurred at a time when he was deep in the throes of depression.

"*Remoteness of Prior Offenses.* The misconduct which gave rise to the two previous informal admonitions was remote in time but not in character to the present case."

In addition to the above-cited factors, the hearing panel thoroughly examined and considered the following Standards regarding suspension:

Standard 4.12:

"Suspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client.

Standard 4.42:

"Suspension is generally appropriate when:
  (a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or
  (b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.

Standard 7.2: "Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a client, the public, or the legal system."

As noted earlier, in Respondent's disciplinary Case No. 96,885, the hearing panel, composed of the same members sitting in Case No. 99,494, had unanimously recommended that Respondent be suspended from the practice of law in the state of Kansas for a period of 2 years. However, that panel further recommended that the imposition of the discipline be suspended and that he be placed on probation for a period of 2 years, subject to terms and conditions. In the instant case, Respondent recommended that, rather than being indefinitely suspended, he instead be placed on that same probation subject to the terms and conditions detailed in that earlier report. This request was considered by the panel but rejected. The panel stated in relevant part:

"The Hearing Panel has carefully considered the Respondent's request for probation. However, it is the opinion of the Hearing Panel that probation is no longer a viable option in this case.

. . . .

"Kan. Sup. Ct. R. 211(g) . . . requires that the Respondent establish that the misconduct can be corrected by probation. The Respondent has failed to meet this burden. The Hearing Panel provided the Respondent nearly five months to comply with certain conditions contained in the Interim Order, including distributing thousands of dollars to the Respondent's clients. The Respondent failed to distribute any monies other than to [D.C.] and to himself. Because the Respondent failed to comply with the Interim Order, the Hearing Panel has no confidence that the Respondent would comply with the terms and conditions of probation.

"Finally, the Respondent must also establish that placing him on probation is in the best interests of the legal profession and the citizens of the State of Kansas. The Hearing Panel concludes that placing the Respondent on probation is not in the best interests of the legal profession and the citizens of the State of Kansas. The Respondent has improperly held client monies for years. The Respondent failed to distribute the money even when he knew that he would again be appearing before the Hearing Panel regarding the distribution of the client funds. Because the Respondent has inexplicably failed to comply with the Hearing Panel's Interim Order, the Hearing Panel unanimously concludes that probation is not appropriate in this case.

"Based upon the findings of fact, conclusions of law, and the Standards listed above, the Hearing Panel unanimously recommends that the Respondent be indefinitely suspended from the practice of law in the State of Kansas."

## RESPONDENT'S EXCEPTIONS TO THE PANEL'S REPORT

Respondent reaffirms that he "stipulated at the panel hearing . . . to violations of the KRPC 1.4(a), . . . KRPC 1.15(a) and (b), . . . KRPC 8.4(g), . . . and Kan. Sup. Ct. R. 207(b)." He again "accepts responsibility for these violations and [his] shortcomings," but also asserts that the "violations were born from a time when [he] was suffering from clinical depression." Respondent now contests some of the findings and the recommendation of the hearing panel, raising four issues:

I. *Does clear and convincing evidence exist that Respondent violated Kansas Supreme Court Rule 207(b) concerning his cooperation with the ODA's audit of Respondent's trust account?*

II. *Does clear and convincing evidence exist that Respondent's failure to distribute funds from his client trust account subsequent to the hearing panel's April 2007 interim order was a "knowing" violation of that order?*

III. *Were Respondent's due process rights violated in connection with the hearing panel's inquiries and findings regarding Respondent's probation plan?*

IV. *Did Respondent's misconduct lack scienter to support the hearing panel's recommendation of indefinite suspension?*

## ANALYSIS

*Standard of Review*

As mentioned, in attorney disciplinary proceedings, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of the Kansas Rules of Professional Conduct exist. If they do, the court considers the discipline to be imposed. Any attorney misconduct must be established by substantial, clear, convincing, and satisfactory evidence. *In re Comfort*, 284 Kan. 183, 190, 159 P.3d 1011(2007).

This court views the findings of fact, conclusions of law, and recommendations made by the disciplinary panel as advisory only but gives the final hearing report the same dignity as a special

verdict by a jury or the findings of a trial court. Therefore, the panel's report will be adopted where amply sustained by the evidence but not where it is against the clear weight of the evidence. When the panel's findings relate to matters about which there was conflicting testimony, this court recognizes that the panel, as the trier of fact, had the opportunity to observe the witnesses and evaluate their demeanor. This court does not reweigh the evidence or assess the credibility of witnesses. *Comfort*, 284 Kan. at 190. Rather, this court examines any disputed findings of fact and determines whether clear and convincing evidence supports the panel's findings. *In re Kellogg*, 269 Kan. 143, 153, 4 P.3d 594 (2000). If so, the findings will stand. Moreover, it is not necessary to restate the entire record to show substantial competent evidence to support the panel's findings. 269 Kan. at 153.

Issue I. *Clear and convincing evidence does exist that Respondent violated Kansas Supreme Court Rule 207(b) concerning his cooperation with the ODA's audit of Respondent's trust account.*

Respondent asserts that he "made reasonable and timely responses to ODA investigator Straub's inquiry." He claims that information requested by Straub "was locked away in a computer that was surrendered to the Disciplinary Administrator between the dates of September 19, 2006, and December 22, 2006. . . . Respondent's computer was not returned until after January 26, 2007." He also asserts that he "was unsure how to respond until after the hearing before the Hearing Panel" which occurred on April 24, 2007, 2 to 3 months after he reacquired his computer.

The Disciplinary Administrator argues that Respondent knew and "the panel found that respondent knew that he was required to cooperate with Mr. Straub in connection with the examination of the respondent's trust account and that the respondent failed to provide Mr. Straub with requested information." The Disciplinary Administrator also reminds this court that Respondent admitted at the hearing that he violated Kansas Supreme Court Rule 207 "by his failure to cooperate promptly with Mr. Straub's request for information regarding his trust account." He emphasizes several

actions or nonactions of Respondent, which display a knowing lack of cooperation and are supported by the record:

At the initial audit (of which Respondent had been clearly earlier informed) at Respondent's law office on June 20, 2006, Respondent could not provide information as to the identity of ownership of $33,777.94 in the client trust account.

On June 26, 2006, Straub sent Respondent a letter requesting an explanation by July 14, 2006, of the ownership of that $33,777.94. Respondent replied late — his letter is dated July 28, 2006 — and then only with the excuse that due to software problems he could not identify the ownership.

On September 19, 2006, Straub again wrote Respondent requesting bank statements, deposit slips, cancelled checks, a check register, and client ledgers. A meeting was set up between Straub and Respondent for very late that same month to review the requested documents. The documents were not provided, with Respondent again claiming computer problems.

After taking possession of Respondent's computer on November 8, 2006, Straub was able with assistance to identify the clients and balances approximately equal to the funds in the trust account. Respondent admitted he could have hired an individual with computer expertise to retrieve that same information, acknowledging that from June until December 2006 he was not able to take any action to figure out whose money was in his trust account.

On December 22, 2006, Straub in a letter requested Respondent to provide information on the funds and clients discovered during the review of Respondent's computer, asking that this information be provided by January 24, 2007. On January 22, 2007, Respondent stated that while he was making progress on the request, he needed his computer to determine some of the requested information. The Disciplinary Administrator argues, "It is inconceivable that the respondent could not have reviewed his client files or independent client ledgers to determine the amounts owed to these clients. The respondent acknowledged this at the hearing." The computer was returned to Respondent, and again the information was requested.

As of the date of the filing of the formal complaint, March 15, 2007, Respondent had still not provided any information regarding the funds in that trust account which had not been distributed. That $33,777.94 had been in Respondent's trust account since at least September of 2003.

It is apparent that "substantial, clear, convincing, and satisfactory evidence" existed for the hearing panel to conclude that Respondent violated Kansas Supreme Court Rule 207(b) in connection with his lack of cooperation and communication with the ODA's audit of Respondent's client trust account.

Issue II. *Clear and convincing evidence does exist that Respondent's failure to distribute funds from his client trust account subsequent to the hearing panel's April 2007 interim order was a "knowing" violation of that order.*

Respondent asserts that he did disburse funds from his client trust account to D.C. and to himself prior to receiving what he refers to as a July (actually June) 14, 2007, letter from the Disciplinary Administrator. However, he asserts that the letter advised: "I [the Disciplinary Administrator] will have Mr. Straub work with the Respondent so that we can come up with some sort of an agreement to distribute the remaining funds held by Mr. Corrin." Respondent argues that "implicit within the . . . letter to Respondent is that 'someone was going to review Respondent's information and get back with him.' In fact, the Disciplinary Administrator did on July 24, 2007," and "in that letter Respondent gets the direction to distribute money."

Ostensibly, even though at the September 11, 2007, hearing Respondent's counsel acknowledged that Respondent had made no distributions from that trust account since the July 24, 2007, letter, and even though his counsel had advised him to do so at that time, Respondent argues that these facts he describes show that he did "work in a timely manner to disburse money to clients after Respondent determined the status and posture of same."

In response, the Disciplinary Administrator notes that the ODA docketed a complaint by D.C. against Respondent on May 28,

2004. Respondent acknowledged at the April 24, 2007, panel hearing that he had no authority to retain D.C.'s funds once the complaint was filed. He admitted then that he had still not distributed those monies to D.C. When asked when he should have distributed those monies, he testified that they should have been distributed in October 2006. When asked why he had not distributed the funds, Respondent indicated "he was not sure it was appropriate to distribute the funds prior to the hearing on April 24, 2007."

As mentioned, on April 25, 2007, the panel issued its interim order, which required that Respondent provide client ledgers to the ODA by May 28, 2007. On May 30, 2007, Respondent's counsel offered to e-mail the client ledgers. On June 14, 2007, the ODA agreed to accept those. On July 24, 2007, the Disciplinary Administrator advised Respondent's counsel via letter that Respondent should start making distributions if he had not already done so. However, at the September 11, 2007, hearing Respondent's counsel acknowledged that Respondent had made no distributions from that trust account since that July 24, 2007, letter, even though counsel had advised Respondent to do so at that time. Respondent's counsel also admitted that after July 24, 2007, there was no excuse as to why the money had not been distributed.

While Respondent claims not to have "known" that he should have been distributing funds, he did in fact distribute money to himself from his trust account and to D.C. during the time in question.

As is apparent, "substantial, clear, convincing, and satisfactory evidence" existed for the panel to conclude that Respondent's failure to distribute funds from his client trust account subsequent to the panel's April 2007 interim order was a "knowing" violation of that order.

Issue III. *Respondent's due process rights were not violated in connection with the hearing panel's inquiries and findings regarding his probation plan.*

At the April 24, 2007, hearing:

Respondent had requested that he remain on the probation plan he had presented to the panel on the 2006 disciplinary complaints hearing, and which that panel had recommended;

Respondent's counsel had answered questions from the panel regarding Respondent's probation and even invited the panel to review probation reports from Mr. Gregory, Respondent's probation plan supervisor;

Respondent had also answered questions about his probation plan.

At the end of the September 11, 2007, hearing, the panel indicated just before a brief recess that it would again ask questions regarding Respondent's compliance with his probation plan. Upon returning from the recess, Respondent's counsel objected, arguing that he was unsure the hearing panel had jurisdiction over that plan. The panel conferred briefly and overruled the objection, but asked only a few questions concerning the probation plan, and none of the Respondent. The panel asked the Disciplinary Administrator about Respondent's meetings with supervising attorney Gregory and whether the ODA had taken any action on Respondent's probation plan given his failure to comply with the requirements set forth in the April 6, 2006, Final Hearing Report on the earlier disciplinary complaints. The Disciplinary Administrator advised the panel that no such action had been taken and that Respondent was cooperating with Gregory. The panel chairperson then indicated that no further questioning would occur.

Respondent now argues that "under long standing jurisdictional theories, Respondent's objection to jurisdiction because the matter was under review before the Kansas Supreme Court was appropriate," citing *Haddock v. State*, 282 Kan. 475, 493, 146 P.3d 187 (2006) ("[T]he district court no longer had jurisdiction once the appeal was docketed. See *ARY Jewelers v. Krigel*, 277 Kan. 464, 473, 85 P.3d 1151 [2004] [' "A trial court does not have jurisdiction to modify a judgment after it has been appealed and the appeal docketed at the appellate level." '] "). He then argues that "Respondent's submission of a probation plan and compliance therewith to the Kansas Supreme Court in case number 06-96885-S is a comparable situation to the trial court's loss of jurisdiction once a matter is before the Appellate Court."

Respondent now also argues that "Respondent was not on notice that Respondent's probation plan was under review by the Hearing

Panel. . . . Respondent could not respond to probation plan compliance because Respondent was never aware that the subject was going to be discussed at the September 11, 2007 review hearing."

We hold that it was appropriate for the panel to ask about Respondent's earlier-proposed probation plan, especially given his recommendation in the instant case that he be placed on probation subject to the terms and conditions of that same plan. The panel noted that, in order to have this recommendation accepted, as required by Kansas Supreme Court Rule 211(g)(3), Respondent would have to "present evidence that the Respondent continues to have the plan in effect . . . ." We note that Respondent and his counsel had answered questions about the probation plan at the earlier April 24, 2007, hearing. While the panel at that hearing did not find noncompliance by Respondent with his previously submitted probation plan, it did eventually express its concerns, as mentioned earlier.

Accordingly, it is clear that Respondent and his counsel were or should have been aware that the probation plan would likely be a topic of discussion at the September 11, 2007, hearing, just as it was at the earlier April 24 hearing. It was more than reasonable that the panel, composed of the same panel members who had heard his earlier disciplinary complaint and approved that earlier probation plan, would ask questions about Respondent's compliance with that plan. Accordingly, Respondent's due process rights were not violated by the inquiries and findings regarding his probation plan.

Issue IV. *Respondent's misconduct did not lack scienter.*

Respondent begins his last argument by referencing Kansas Supreme Court Rule 226, Rule 1.0(g) "Terminology," which defines "knowingly," "known," or "knows" as requiring actual knowledge of the fact in question. (2007 Kan. Ct. R. Annot. 381.) However, he acknowledges that "a person's knowledge may be inferred from circumstances." (2007 Kan. Ct. R. Annot. 381.) He notes that the hearing panel considered the following standards concerning suspension, emphasizing that they contain a "knowledge" requirement:

" 'Suspension is generally appropriate when a lawyer *knows or should know* that he is dealing improperly with client property and causes injury or potential injury to a client.' Standard 4.12.

" 'Suspension is generally appropriate when:

(a) a lawyer *knowingly* fails to perform services for a client and causes injury or potential injury to a client; or

(b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.' Standard 4.42.

" 'Suspension is generally appropriate when a lawyer *knowingly* engages in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a client, the public, or the legal system.' Standard 7.2."

After recitation of these standards' knowledge requirement, Respondent asserts that no clear and convincing evidence was introduced that he " 'knowingly' dealt improperly with client property, 4.12; 'knowingly' failed to perform services, 4.42; or 'knowingly' engaged in conduct violating a duty to a client or profession, 7.2." He then argues that his admitted misconduct is closer to the following standards for imposing a reprimand:

" 'Reprimand is generally appropriate when a lawyer is negligent in dealing with client property and causes injury or potential injury to a client.' Standard 4.13.

" 'Reprimand is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client and causes injury or potential injury to a client.' Standard 4.43.

" 'Reprimand is generally appropriate when a lawyer negligently engages in conduct that is a violation of a duty that is owed to the profession and causes injury or potential injury to a client, the public or the legal system.' Standard 7.13."

We find that "substantial, clear, convincing, and satisfactory evidence" existed for the panel to conclude that Respondent "knowingly" violated Kansas Supreme Court Rule 207(b) in connection with his continued lack of cooperation with the ODA's audit of Respondent's client trust account and to further conclude that his failure to distribute funds from his client trust account subsequent to the hearing panel's April 2007 interim order was a "knowing" violation of that order.

In rejecting Respondent's request for supervised probation, the Disciplinary Administrator argues for indefinite suspension, as recommended by the panel:

"This disciplinary case is highly unusual. The respondent has had money in his trust account for a number of years for which he could not identify the ownership. The respondent was afforded every opportunity by the panel hearing his case to identify and distribute those funds. The respondent failed to do so. To date, no proof has been provided by the respondent that all funds have been distributed from his trust account. The respondent is not capable or fit to practice law based on the findings made by the panel in this case. The panel's recommendation of indefinite suspension should be accepted by this court."

We have thoroughly reviewed the record, which contains the formal complaint, transcripts of the proceedings before the panel, and supporting material. We adopt the hearing panel's findings of fact and its conclusions of law. We acknowledge its earlier recommendation that Respondent be suspended from the practice of law for 2 years, but with the imposition of that discipline suspended, and that he be placed on probation for 2 years. We further acknowledge Respondent's oral argument to this court that placing him on supervised probation would provide him with greatly needed structure. However, we agree with the panel's rationale and adopt its recommended discipline of indefinite suspension from the practice of law in the State of Kansas. Its earlier recommendation for discipline on Case No. 96,885 was made before the exacerbating problems in Case No. 99,494 were fully known.

## No. 96,885 and No. 99,494 - DISCIPLINE

IT IS THEREFORE ORDERED that Respondent Dwight Alan Corrin be and he is hereby suspended for an indefinite period from the practice of law in the State of Kansas in accordance with Supreme Court Rule 203(b) (2007 Kan. Ct. R. Annot. 261) for violations of KRPC 1.3, KRPC 1.4, and Kansas Supreme Court Rule 207(b) in Case No. 96,885, and for violations of KRPC 1.4(a), KRPC 1.15(a), KRPC 1.15(b), KRPC 8.4(g), and Kansas Supreme Court Rule 207(b) in Case No. 99,494.

IT IS FURTHER ORDERED that Respondent shall, under the supervision of the office of the Disciplinary Administrator, pay, within 30 days of the date of the filing of this opinion, the clients owed funds from Respondent's client trust account, in accordance with Supreme Court Rule 203(a)(5) (2007 Kan. Ct. R. Annot. 261).

The Disciplinary Administrator shall monitor the account and report on the status every 30 days thereafter until all monies not belonging to Respondent have been transferred from the account.

IT IS FURTHER ORDERED that, in accordance with Supreme Court Rule 218(a) (2007 Kan. Ct. R. Annot. 337), Respondent shall forthwith notify in writing each client or person represented by him in pending matters of his inability to undertake further representation of such client; Respondent shall also notify in writing such client to obtain other counsel in each such matter; and, as to clients involved in pending litigation or administrative proceedings, Respondent shall also notify in writing the appropriate court or administrative body, along with opposing counsel, of such inability to further proceed and shall file an appropriate motion to withdraw as counsel of record.

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to Respondent and that this order be published in the official Kansas Reports.

LUCKERT and JOHNSON, JJ., not participating.

MARQUARDT and MALONE, JJ., assigned.